INHABITANTS OF WINTHROP *versus* DANIEL A. FAIRBANKS.

An exception in a deed is always a part of the thing granted and of a thing in being.

A reservation is of a thing not in being, but is newly created out of the premises demised.

But exception and reservation have often been used indiscriminately, and the difference between them is so obscure in many cases, that it is not regarded; that which in terms is a reservation in a deed is often construed to be a good exception, in order that the object designed to be secured may not be lost.

When a reservation is construed to be an exception, no words of inheritance are necessary, in order that the rights reserved or excepted may go to the heirs or assigns of the grantor.

The words, in a deed, "reserving forever for myself, the privilege of passing with teams, &c. across the same in suitable places, to land I own to the south of the premises," confer the benefit of an exception in favor of the grantor, his heirs and assigns, as occupants of the remaining lands belonging to him, "south of the premises," the privilege reserved being appurtenant to such lands.

The grantee in a deed poll by its acceptance becomes bound by all its restrictions, limitations, reservations and exceptions; and the deed may charge other lands with a servitude, than those, which were the subject of conveyance.

ON REPORT from *Nisi Prius*, CUTTING, J., presiding.

This was an ACTION OF THE CASE for disturbing a way which the plaintiffs claimed across land of the late Elijah Fairbanks, jr., the father of the defendant.

After the evidence was out, the cause was taken from the jury by consent, and referred to the law Court, with power to find such facts and draw such inferences as a jury might. If, upon the evidence, the Court were of opinion, that the plaintiffs had a right of way, as alleged by them, the defendant was to be defaulted for nominal damages, otherwise, the plaintiffs were to become nonsuit.

The facts in the case are fully stated in the opinion of the Court.

*Bradbury & Morrill*, for defendants.

1. The reservation in the deed from E. Fairbanks, sen., to E. Fairbanks, jr., is "to himself," and not to his heirs and

assigns.  It is a reservation *during the life of the grantor*, and at his decease, the right ceased.

The grant is general, and every thing passed except what was clearly reserved.

The instrument is to be construed most strongly against the grantor.

There are not only no words of inheritance, but there are those of limitation.  The words " to myself," exclude by implication, all others at his decease.  2 Jarmon on Wills, 170; *Kirby* v. *Holmes*, 2 Wilson, 8.

In a later deed of other lands, when the grantor wished to make reservations of a similar right perpetual, he employed .appropriate terms to do so.  This fact shows the language to have been designedly selected, and the rest of the phrase, the " privilege of passing," tends also to show the intention that the reservation should not be perpetual.

2. The plaintiffs acquired no right of way across this piece of land, by their deed from Jesse L. Fairbanks, for the plain reason that he had none to convey.  His grantor, Elijah, sen., had conveyed this tract to their grantor, Jesse L., in 1811, eight years before he deeded the plaintiffs' farm.

3. Elijah, jr.'s acts are not sufficient to enlarge the reservation.

4. No right has been acquired by adverse user.  Such user, to give a right, must be under such circumstances as to give the general owner to understand that a right was being claimed.

*Lancaster*, for plaintiffs.

1. The reservation in the deed of 1811, was for the benefit of the grantor's land south of the pond, and was only beneficial to the grantor, as the owner of that land.  So it passed to his grantees, when he conveyed the land south of the pond, as appurtenant to that land.  *White* v. *Crawford*, 10 Mass. 183; *Mendell & al.* v. *Delano*, 7 Met. 176; *Bowen & al.* v. *Conner*, 6 Cush. 132.

2. The authorities cited require that this *reservation* should

be construed, if necessary, as an *exception* of this right of way for the use of the land south of the pond, and that it should in this form avail to the grantor, his heirs and assigns, as occupants of that land. The authorities also show, that the effect of such a deed is the same as if the deed had been in common form with no reservation, and the grantee at the same time had given back a deed conveying this right of way.

3. The road was as important and useful to Jesse L. and John, as it had been to their father.

The parties to the family division made in 1819, understood that they had mutual and reciprocal rights of way over each other's land, *and they always afterwards acted upon this view of the subject.*

The acts of the parties through the whole period from 1819, till after the death of Elijah, jr., furnish a contemporaneous, practical construction of the deeds. This intention, the plaintiffs claim, should be effectuated, if it can be done without violating any well established principle of law.

4. The plaintiffs contend, that the defendant is estopped to deny this right of way; — 1. By the deed of June 3, 1811, from his grandfather to his father. *Mendell & al.* v. *Delano*, 7 Met. 179; *Bowen & al* v. *Conner*, 6 Cush. 132. — 2. By the acts and declarations of his father from 1819, to his death.

5. The plaintiffs also contend, that as E. Fairbanks, jr., availed himself of the family settlement made Jan. 22, 1819, so far as a right of way was concerned over John and Jesse L's lot, then conveyed to him south of Jesse's lot, he should be estopped to deny to them the reciprocal right to cross his land for the use of theirs.

6. The plaintiffs are entitled to recover, because they and Jesse L., under whom they claim, have had the peaceable, uninterrupted, and adverse use of this way more than twenty years before the disturbance complained of. R. S., c. 147, § 14; 2 Greenl. Ev. § 539; 2 Greenl. Cruise, 87, and cases there cited; *Bolivar Man. Co.* v. *Neponsit Man. Co.*, 16 Pick. 241; *Melvin* v. *Whitney*, 10 Pick. 295.

7. John and Jesse L. did not occupy under a *mistake,*

as defendant contends, *but under a void grant*, which would be clearly a disseizin. 1 Greenl. Cruise, 52, note 3.

TENNEY, C. J. — For some years prior to the year 1811, Elijah Fairbanks, sen., owned a tract of land north and south of Narrow's pond, so called, and extending therefrom to the east and to the west. It is understood that the residence of the owner was on the north side of the pond. In order to have a convenient mode of access to the land upon the south of the pond, he constructed a way from one side to the other around the eastern end of the pond, as early as the year 1807.

On June 3, 1811, he conveyed a parcel of this land, situated upon the north side of the pond, and called the thirty-two acre piece, to his son, Elijah Fairbanks, jun., with the following clause after the description of the land conveyed:—
"Reserving forever for myself, the privilege of passing with teams and cattle across the same, in suitable places, to land I own to the south of the premises."

By an arrangement between Elijah Fairbanks, sen., and his sons Elijah, John and Jesse L. Fairbanks, on Jan. 22, 1819, the father conveyed to each of the sons other portions of his estate; to John a lot next south of that which he had conveyed before to Elijah; to Jesse L. the parcels which are now owned by the plaintiffs; and to Elijah a lot still further south, and in each of these deeds was the following, after a description of the premises:— "reserving to myself, and my heirs and assigns, the privilege of a bridle road or way, in any suitable place, for the purpose of passing and repassing with creatures and teams to and from any adjoining land, owned by any of them."

The deed from Jesse L. Fairbanks to the plaintiffs, dated April 15, 1837, contains the following, after the premises are described:— "also a right of way to the said, the inhabitants of the town of Winthrop, their successors and assigns forever, for all purposes necessary and convenient, to and from the premises last described, across the land of said Elijah and

John Fairbanks, according to reservations of right of way in their deeds of said land from my late father, and as has been used and enjoyed in carrying on and managing the land hereby conveyed, in passing to and from the several parcels thereof, through and across the land of said Elijah and John Fairbanks."

The defendant is the son of Elijah Fairbanks, jun., (who died about four years before the trial,) and he forbade and prevented the plaintiffs from passing over the parcel conveyed to his father in 1811, upon the way thereon constructed, in going from one part to another of the land held under the deed of Jesse L. Fairbanks to them. And the legal question presented by the report and argument, is whether they had the right of passage attempted to be exercised.

The defendant denies the right of the plaintiffs to pass over the land conveyed to his father on June 3, 1811, on the ground that the reservation was of a right of way, *in gross* to the grantor alone, and did not pass to Jesse L. Fairbanks, and could not therefore be transmitted by the latter to the plaintiffs; or at any rate, the right could not exist after the death of Elijah Fairbanks, sen., which occurred in 1836. The plaintiffs do not admit that the reservation in the deed of Elijah Fairbanks, sen., to his son Elijah, of June 3, 1811, is one in gross to the grantor only, but that the land conveyed by that deed is charged with the easement and servitude annexed to the lands, which continued to be owned, after that deed by the grantor, as appurtenant thereto.

A reservation has sometimes the force of a saving or exception. Co. Litt. 143. Exception is always a part of the thing granted, and of a thing in being; and a reservation is of a thing not in being, but is newly created out of the lands and tenements demised, though exception and reservation have been used promiscuously. Co. Litt. 47, a. And it is well settled, that in giving construction to instruments in writing, the intention of the parties is to be effectuated, and if a deed cannot effect the design of them in one mode known to the law, their purpose may be accomplished in another,

provided no rule of law is violated. Hence, the distinction between an exception and a reservation is so obscure in many cases, that it has not been observed; but that which in terms is a reservation in a deed is often construed to be a good exception, in order that the object designed to be secured may not be lost.

If the reservation in the deed of Elijah Fairbanks, sen., is to be treated as an exception and the recognition of a way over the land described, then being made by the owner of the land for himself, while he was in the occupation and use thereof, it would confer the benefit of an exception to the grantor, his heirs and assigns, as occupants of the remaining lands belonging to him, and it would become appurtenant to these lands; and no words of inheritance would be necessary. It was a right, which, if an exception, did not pass to the grantee. This doctrine is fully recognized, in the cases cited for the plaintiffs, of *White* v. *Crawford*, 10 Mass. 183; *Murdell & al.* v. *Delano*, 7 Met. 176; *Bowen & al.* v. *Conner*, 6 Cush. 132. In the last case it is said, that the law in Massachusetts is settled by a series of decisions, that a right of way may be as well created by a reservation or exception, in the deed of the grantor, as by a deed from the owner of the land to be charged.

The evidence reported shows, that Elijah Fairbanks, sen., regarded the passage across the parcel first conveyed to his son Elijah, to his lands south of the pond, as a convenient, if not a necessary mode of having access thereto, while he was the owner of the whole; as he had prepared a road thereon for that purpose. When he conveyed the thirty-two acre piece, he retained the right to pass over the same forever to himself. When he alienated the lands south of the pond, it was equally important to those who had an interest therein, and who owned a part or the whole of his lands on the north side, that this right of passage should continue to them, as to have previously existed in him. And if there had been no reservations in the deeds given by the grantor to his sons on Jan. 22, 1819, we are entirely satisfied, that

the right of way reserved, or excepted in his deed of June 3, 1811, was intended for the benefit of his lands on the south side of the pond, and was annexed as appurtenant thereto, and would have passed by his deed to Jesse L. Fairbanks, and from him to the plaintiffs.

On other grounds, we think the right of passage over the thirty-two acre lot, clearly exists in the plaintiffs. The grantee in a deed poll, by its acceptance, becomes bound by all the restrictions, limitations, reservations and exceptions contained in it; and the deed may charge other lands with a servitude, than those which were the subject of conveyance. *Vickerie* v. *Buswell*, 13 Maine, 289; *Newell* v. *Hill*, 2 Met. 180.

On Jan. 22, 1819, Elijah Fairbanks, sen., was the owner of the whole estate, excepting the thirty-two acre lot, previously conveyed to his son Elijah. Over the portion so conveyed, it is admitted he had the right of way to his lands on the south of the pond. On that day he made several conveyances of parts of his farm, remaining, to his three sons, one of whom was Elijah, with the reservations therein contained. These deeds were accepted, and the grantees became bound by exceptions, which were for the benefit of the grantor, his heirs and assigns. The exceptions were not limited to the right of passage over lands, conveyed at that time, but they extended it to and from any adjoining lands, owned "by any of them." Elijah Fairbanks, jr., was then the owner of the land conveyed to him on June 3, 1811, and the land was adjoining a part of that conveyed to Jesse L. Fairbanks, the plaintiffs' grantor. This reservation or exception would therefore apply to the lot of land over which the defendant denies to the plaintiffs the right of passage; and the interruption of this right was a wrong on the part of the defendant, for which this action can be maintained. *Defendant defaulted.*

*Judgment for damages in the sum of one dollar.*

HATHAWAY and CUTTING, J. J., concurred.

RICE, J., concurred in the result.

MAY, J., did not sit.