# McMahon *v.* Williams.

*Bill in Equity for Injunction to enforce and protect Easement in Land.*

1. *Jurisdiction of equity to enforce and protect easement in land.*
When an easement or servitude in lands is created by deed imposing a lawful restriction upon their use, a court of equity will interfere to protect and enforce it by injunction and bill in the nature of specific performance, as between the immediate parties and sub-purchasers with notice.

2. *Easement created and reserved by deed; whether personal only, or appurtenant to estate.*—An easement, or servitude, created by deed, is never presumed to be personal, or in gross, when it can be fairly construed to be appurtenant to some other estate; and when the reservation naturally operates to enhance the value of the other adjacent lands of the grantor, it is a strong circumstance to indicate that it was intended to be appurtenant to the estate, and not merely personal to the grantor.

3. *Same; case at bar.*—In this case, the owner of certain lands fronting on the river, on which he had a ware-house and landing, conveyed a part of them by deed to a steam-mill company as a site for their mill, expressly reserving to himself, his heirs and assigns, the right to erect and have a warehouse and landing on any part of the premises, and prohibiting such erection or use by the grantees, their heirs or assigns; *held,* that the easement was not personal to the grantor only, but was appurtenant to the lands, passed to a subsequent purchaser, and might be enforced by him against a sub-purchaser of the granted premises with notice.

4. *Same; condition of forfeiture and reversion.*—A stipulation in such deed providing for a forfeiture and reversion of the granted premises, on breach of the condition, is not assignable, but is only available to the grantor or his heirs; and it does not take away the jurisdiction of equity to protect and enforce the easement at the suit of an assignee or purchaser of the dominant estate.

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. THOS. COBBS.

The bill in this case was filed on the 20th December, 1883, by David H. Williams, against A. W. McMahon and John Rogers; and sought, principally, to enjoin the erection and use by the defendants of a ware-house and landing on certain premises owned and occupied by them, and to establish the complainant in the exclusive right to such ware-house and landing privileges. The premises owned by each of the parties, which fronted on the river in the town of Gainesville, belonged in 1836 to Moses Lewis; and the part owned and occupied by the defendants was conveyed by him, in February, 1836, to David M. Russell and others, engaged in business as partners

[McMahon v. Williams.]

under the name of the Gainesville Steam-Mill Company, from whom the defendants derived title by mesne conveyances. The complainant was the owner of the adjacent lands which had belonged to said Lewis at that time, claiming as a sub-purchaser; and the claim asserted by his bill was founded on certain reservations and stipulations contained in the convey-ance by said Lewis to the Steam-Mill Company. The defendants filed a demurrer to the bill, which the chancellor over-ruled; and his decree is now assigned as error. The material stipulations of the deed are stated in the opinion of the court.

L. B. GODFREY, J. B. HEAD, and GUNTER & BLAKEY, for the appellants, cited *Badger v. Boardman*, 16 Gray, 559; *Wood-ruff v. Water Power Co.*, 2 Stockt. (N. J.) Ch. 502; *Under-hill v. Railroad Co.*, 20 Barb. 455; *Blanchard v. Railroad Co.*, 18 Amer. Rep. 142; 10 East, 295; 2 Co. 70; 6 Barb. 386; 2 Bla. Com. 155; 2 Dutcher, N. J. 1; 3 *Ib.* 376; 12 Ired. 194; 3 Jones, N. C. 12; 19 N. Y. 100.

T. B. WETMORE, and A. G. SMITH, *contra*, cited *Robbins v. Webb*, 68 Ala. 393; and *Webb v. Robbins*, 77 Ala. 176.

SOMERVILLE, J.—The bill is one in the nature of specific performance, filed for the establishment and enforcement of an easement alleged to have been created in certain premises owned by the defendant McMahon, and leased by him to the defendant Rogers, who is sought to be enjoined from the use of the same in carrying on a general ware-house business.

In the year 1836, and prior thereto, one Moses Lewis was the owner in fee of a parcel of land in the town of Gainesville, Alabama, on the Tombigbee river. In February of that year, he conveyed a portion of this land, described in the bill and known as the "Steam-Mill site," to an association of persons calling themselves the "Steam-Mill Company," subject, as the deed recites, to certain "limitations, reservations, and restric-tions." The grantees, their heirs and assigns, were expressly prohibited from opening across said premises any public river landing, or having or erecting thereon a public ware-house; but this right was reserved to the grantor, his heirs and assigns, to be exercised in such manner as not to materially interfere with the mill-business of the original grantees, or their assigns.

The complainant claims as purchaser, through various mesne conveyances, from Moses Lewis, alleging his ownership in fee of all of the ware-house lots and ware-house privileges of said Lewis. The defendants are alleged to have derived their title to the steam-mill site from the Steam-Mill Company, to whom Lewis sold in 1836.

[McMahon v. Williams.]

It is most obvious that, as between Moses Lewis, the original vendor, and his immediate vendees, the Steam-Mill Company, there was created, by express reservation, an easement in the granted premises, the nature of which is unmistakable. The vendees, their heirs and assigns, were excluded from the privilege of carrying on the ware-house business, and the grantor reserved this right for the benefit of himself, his heirs and *assigns*. An easement may consist, either in suffering something to be done, or in abstaining from doing something upon the servient tenement.—4 Kent Com. 419. Here, we have an illustration of both phases of it. In the civil law it is denominated a servitude, and its existence involves the idea of two distinct tenements,—a dominant estate, to which the right is accessorial, and a servient estate, upon which it is a burden or charge. A common form of such an easement or servitude, as in the present case, is the prohibition of a grantee or lessee from carrying on a particular kind of business or occupation on the servient estate, which, if unobjectionable on grounds of public policy, a court of equity will intervene to establish and protect by asserting a jurisdiction in the nature of specific performance.—*Robbins v. Webb*, 68 Ala. 293; *Webb v. Robbins*, 77 Ala. 176; *Trustees v. Lynch*, 70 N. Y. 440; s. c., 26 Amer. Rep. 615; Law Real Prop. (Boone), § 148; *Barrow v. Richards*, 8 Paige, 360.

The effect of the deed was to qualify the nature of the estate granted by Moses Lewis to the Steam-Mill Company; and by the acceptance of this deed, they became bound by all the reservations and limitations contained in the instrument, as fully and as effectually as if they had actually signed it. The grantees, in other words, took the fee expressly burdened with a servitude.—*Atlantic Dock Co. v. Leavitt*, 54 N. Y. 35; s. c., 13 Amer. Rep. 556; *Newell v. Hill*, 2 Metc. 180; *Winthrop v. Fairbanks*, 41 Me. 307.

The defendants, having notice of this servitude, acquired no better title than that of the original vendees, their assignors. "All agree," says ALLEN, J., in *Trustees v. Lynch* (70 N. Y. 440; s. c., 26 Amer. Rep. 615), "that whoever purchases lands upon which the owner has imposed an easement of any kind, or created a charge which would be enforced in equity against him, takes the title subject to all easements, equities and charges, however created, of which he has notice." To a like effect is the language used by Lord COTTENHAM in *Falk v. Moxhay*, 2 Phil. Ch. 774: "If an equity is attached to property by the owner, no one purchasing, with notice of that equity, can stand in a different situation from the party from whom he purchased."— *Webb v. Robbins*, 77 Ala. 176.

It is contended, however, that the present easement or servi-

tude was intended solely for the personal benefit of the original grantor, Lewis, and not for the protection of his estate, or for the benefit of his successors in title—his heirs or assigns—and that it expired with his natural life. There are easements of this character, which are commonly said to be *in gross*—that is, attached to the person of the one using or claiming them, and not appurtenant to any estate; and the two kinds are often difficult to be distinguished. There are certain general rules on the subject, however, which are well settled, and serve as satisfactory guides in most cases. Whether, in the first instance, such a grant or reservation in a deed confers a personal right merely, or one appurtenant to the premises, must be ascertained from the terms of the deed itself, if it speaks any thing to the point; or, if not, by the situation of the contracting parties and the surrounding circumstances.—*Dennis v. Wilson,* 107 Mass. 591; Law of Real Rrop. (Boone), § 136; *Peck v. Conway,* 119 Mass. 546.

A rule of controlling importance, especially in doubtful cases, is, that such an easement is never presumed to be personal, or in gross, when it can fairly be construed to be appurtenant to some other estate.—Washburn on Easements, 40, 232; *Spensley v. Valentine,* 34 Wisc. 154; *Dennis v. Wilson,* *supra.*

One of the most practical tests, supported by common sense and common business experience, is, whether the restriction imposed by the grantor or proprietor upon the granted premises would naturally operate to enhance the value of his adjacent premises, whether retained by him or conveyed to another. If this be so, it is a strong circumstance to indicate that the restriction was not intended for the mere personal benefit of the grantor, but as a permanent servitude beneficial to the owner of the land, whoever he may be, and appendant to the premises.—*Parker v. Nightingale,* 6 Allen, 341. The reported cases are numerous, and almost infinite in their phases of variety, where tracts of land in cities are sub-divided into lots, and sold to separate purchasers, subject to restrictions as to the kind of occupations which may or may not be carried on upon them, and even as to the nature and dimensions of the buildings to be erected on the premises. The inquiry, in these cases, has generally been, whether the servitudes or restrictions imposed were of such a nature as to operate as an inducement to purchasers; and, if so, the inclination of the courts has been to construe them as appurtenant to the estate, and intended for its protection, rather than personal to the grantor. If appurtenant, it of course follows the land, being assignable with it, and each grantee can enforce it in equity against each other grantee having notice of it.—*Sharp v. Ropes,* 110 Mass. 381;

*Trustees v. Lynch*, 26 Amer. Rep. 615, *supra; Barrow v. Richards*, 8 Paige, 351 ; W *hitney v. Union R. Co.*, 11 Gray, 359 ; *Winthrop v. Fairbanks*, 41 Me. 307.

The application of these principles necessarily leads to the conclusion, that the present restriction against carrying on a public ware-house on the premises granted to the Steam-Mill Company, was intended by the contracting parties to be appurtenant to the adjacent land of the grantor, to protect the proprietor for all time to come, against competition in the warehouse business. The land of the grantor, being situated on a river bank in a town, was valuable chiefly because available for this particular branch of business. The imposition of the servitude on the grantee of a part of this land, was necessary to preserve its value in this particular. That it was greatly beneficial to the adjacent and remaining portion of the tract, retained by the grantor, is not even a subject of doubt. The terms of the deed, moreover, speak to the point by declaring, not only that the right to carry on the ware-house business is prohibited to the grantees and their heirs and assigns, but that it is reserved for the benefit of the heirs and *assigns* of the grantor, as well as for the grantor himself. These considerations are, to our mind, conclusive of the fact, that the servitude in question was intended to be permanent and appurtenant to the estate of the grantor, and not for his personal and temporary protection.

We may add that the case of *Badger v. Boardman*, 16 Gray, 559, cited and relied on by appellant's counsel, seems to militate against the foregoing views to some extent; but that case is explained, if not qualified, in the later one of *Parker v. Nightingale*, 6 Allen, 341, by the observation, that so far from there being anything in the deed to show that the restriction discussed in *Badger v. Boardman*, was designed for the benefit of the owner of the estate who sought to enforce it, "there was reason to believe that the restriction was inserted in the deed with the view to confer a privilege or easement exclusively upon another adjoining estate belonging to the grantor."

The jurisdiction of a court of equity, in this case, is not affected, in our opinion, by the clause inserted in the deed, by way of condition subsequent, providing that in the event of a violation of the rights of the grantor as secured by the servitude imposed on the granted premises, there should be a forfeiture or reversion of the estate. A breach of this condition could be taken advantage of only by the grantor and his heirs, and was not assignable with the estate. It did not, therefore, pass to the complainant, and it affords him no remedy for any existing rights he may have.— *Cross v. Carson*, 44 Amer. Dec.

[Levinshon v. Edwards.]

742; Note, p. 758; *Kennedy v. McCartney,* 4 Port. 141. Restrictions of this nature, creating easements or imposing servitudes, are often enforceable in equity, whether they are inserted by way of condition, covenant, or otherwise.— *Whitney v. Union Railway Co.,* 11 Gray, 359. There is no effort here, as in the case of *Blanchard v. Detroit Railroad Co.,* 18 Amer. Rep. 142, to specifically enforce as a covenant a contract which should be more properly construed to be a condition subsequent. The bill seeks only injunctive relief against the invasion of an equitable right fastened by reservation upon the estate granted to the defendants, and which they accepted subject to the servitude created thereby, and with full notice of it.

The decree of the court is free from error, and should, in our opinion, be affirmed.