The plaintiffs are, individually, owners of five contiguous lots located along Oakway Drive in Mobile, Alabama. They brought this action to enjoin John D. McCown, also the owner of a lot on Oakway Drive, from subdividing his lot in violation of a deed restriction.
In late 1954 and early 1955, William B. Crane and Phyllis C. Crane sold the six lots now owned by plaintiffs and McCown; five of the lots were sold within a thirteen-day period, and the sixth was sold approximately two months later. The deeds to each of the six lots contained the following restrictive covenants:
 "SUBJECT, HOWEVER, to the following restrictive covenants, (Items 1-6, inclusive) . . . which shall run with the land and which shall bind the said land as well as the present and all future owners thereof:
 "1. No part of the above described property shall be used for any commercial or industrial purpose whatsoever.
 "2. Only one principal residential dwelling shall be erected on the said above described land, provided, however, this shall not be construed to prevent or prohibit the construction and occupancy of a servants' quarters and/or garage on said premises, separate from the main dwelling, if construction thereof is either simultaneous with the main dwelling construction or subsequent thereto.
 "3. No cattle, swine, livestock or fowls shall be kept or maintained on said premises, provided, however, this shall not be construed to prevent or prohibit the owner from keeping as domestic pets, cats, dogs or birds.
 "4. The above described property shall not be subdivided or re-subdivided.
 "5. No dwelling, outbuilding, or porch or porte-cochere, or extension or steps of any dwelling or outbuilding, shall be nearer the front line of said property than thirty feet, nor nearer the side boundary lines than five feet, provided, however, the side line limitation shall not apply to any outbuilding, the whole of which shall lie and be within the rear thirty feet of the above described lot.
 "6. No septic tank, or septic tank drain field, and no well or pump shall be placed nearer any lot boundary line than fifteen feet, and no septic tank, unless first approved as to type and construction by the State Board of Health for the particular usage contemplated, shall be placed on said premises."
On December 26, 1980, some twenty-five years after the conveyance of these lots, *Page 1122 
the Cranes and McCown executed an instrument entitled "Amendment to Restrictive Covenants," which purported to release the covenant prohibiting subdivision. This instrument was recorded in the office of the Judge of Probate of Mobile County.
On July 6, 1982, McCown sold a portion of his lot to Wladimir and Susan Jean Paquette Wertelecki, and began preparations for construction of a residence on the portion he retained.[1] The plaintiffs then brought this suit against McCown to enjoin construction of the residence and named William B. Crane and Phyllis C. Crane as defendants; plaintiffs also sought to recover the expenses of the litigation, including attorney's fees. McCown, in turn, filed a counterclaim, seeking damages for slander of title and malicious interference and seeking a declaratory judgment to establish that the release of the covenant was valid.
The trial court held, in part, as follows:
 "It is the opinion of the court that the six lots owned by the Plaintiffs and the Defendants McCown constitute a subdivision developed pursuant to a common development plan or scheme. It is further the opinion of this court that the attempted revocation of the restrictive covenants by the instrument executed by defendants Crane on December 26, 1980 . . . was ineffective and void. It is further the opinion of this Court that the restrictive covenants contained in that certain deed . . . are valid and enforceable by the Plaintiffs herein."
The court then issued a permanent injunction forbidding McCown from "any and all efforts to resubdivide or to perpetuate any previous resubdivision of this property made in violation of the restrictive covenants in effect" and from building a residence on the retained portion of the land "so long as there is in existence a principal residential dwelling on the portion of the property conveyed . . . to Wladimir Wertelecki and Susan Jean Paquette Wertelecki."
Summary judgment was granted in favor of plaintiffs on McCown's counterclaim for slander of title and malicious interference and in favor of the Cranes on plaintiffs' claim for expenses and attorney's fees.
We affirm the disposition of all claims by the trial court.
The trial court determined that the six lots owned by the plaintiffs and McCown constitute a "subdivision developed pursuant to a common development plan or scheme," thus enabling plaintiffs to enforce the restrictive covenants in McCown's deed.
The characteristics of a development created pursuant to a common scheme or plan were considered in Hall v. Gulledge,274 Ala. 105, 109, 145 So.2d 794, 798 (1962), wherein the Court wrote:
 "In Scheuer v. Britt, 218 Ala. 270, 118 So. 658, we quoted with approval the following from 4 Thompson on Real Prop., § 3398:
 "`"Where the owner of a tract of land adopts a general scheme for its improvement, dividing it into lots, and conveying these with uniform restrictions as to the purposes for which the lands may be used, such restrictions create equitable easements in favor of the owners of the several lots, which may be enforced in equity by any one of such owners. Such restrictions are not for the benefit of the grantor only, but for the benefit of all purchasers. The owner of each lot has as appurtenant to his lot a right in the nature of an easement upon the other lots, which he may enforce in equity.
 "`"Whether such restriction creates a right which inures to the benefit of purchasers is a question of intention, and to create such right it must appear from the terms of the grant, or from the surrounding circumstances, that the grantor intended to create an easement in favor of the purchaser."'" ("or from the surrounding *Page 1123 
circumstances" emphasized in original; other emphasis added.)
If, therefore, the six lots in question constitute a subdivision created pursuant to a common scheme of development, the trial court was correct in concluding that the attempted release of the covenant was ineffective to subvert the equitable easements created in the plaintiffs.
McCown argues, however, that the restrictions were imposed for the personal benefit of the Cranes and were not intended to create any rights in the plaintiffs.
Whether the grantor intended to create an easement in favor of the purchaser is a question of fact which "may be proven as is any other fact in the light of legal presumption or precedent." Virgin v. Garrett, 233 Ala. 34, 169 So. 711 (1936). In McMahon v. Williams, 79 Ala. 288, 291 (1885), the Court, considering the indicia of the grantor's intent, wrote as follows:
 "One of the most practical tests, supported by common sense and common business experience, is whether the restriction imposed by the grantor or proprietor upon the granted premises would naturally operate to enhance the value of his adjacent premises, whether retained by him or conveyed to another. If this be so, it is a strong circumstance to indicate that the restriction was not intended for the mere personal benefit of the grantor, but as a permanent servitude beneficial to the owner of the land, whoever he may be, and appendant to the premises. Parker v. Nightingale, 6 Allen [Mass.], 341 [83 Am.Dec. 632]. . . . The inquiry, in these cases, has generally been, whether the servitudes or restrictions imposed were of such a nature as to operate as an inducement to purchasers. . . . Sharp v. Ropes, 110 Mass. 381; Trustees v. Lynch, [70 N.Y. 440] 26 Am. Rep. 615; Barrow v. Richards, 8 Paige [(N.Y.)], 351 [35 Am.Dec. 713]; Whitney v. Union R. Co., 11 Gray [Mass.], 359 [71 Am.Dec. 715]; Winthrop v. Fairbanks, 41 Me. 307."
Moreover, a declaration in the conveying instrument "that restrictive covenants are to run with the land has been cited as a significant factor in determining that a grantor intended a general scheme or plan of development." Wright v. CypressShores Development Co., 413 So.2d 1115, 1124 (Ala. 1982), citing Golian v. Polhironakis, 390 So.2d 187 (Fla.Dist.Ct.App. 1980).
The trial court based its decision on evidence presented in response to motions for summary judgment made by the plaintiffs and by McCown; and though the order appealed from is denominated "summary judgment," it is evident that each party was allowed to fully develop evidence on the issue of the grantor's intent. From this, it is undisputed that the six lots in question were sold within a short period of time; with uniform restrictive covenants; without a reservation of the power by the grantor to alter or amend the restrictive covenants; and with a declaration in the deed that the restrictive covenants "shall run with the land and shall bind said land as well as the present and future owners thereof."
Applying the above stated principles of law to the undisputed material facts, we find that the trial court correctly concluded, as a matter of law, that the six lots were conveyed according to a common scheme of development and that the revocation of the restriction forbidding subdivision was void.
Based upon our review of the record and briefs of counsel, we hold that the trial court also properly granted summary judgment on the remaining issues.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.
[1] The portion of the lot reserved by McCown measured 60 feet by 130 feet, or 7,800 square feet. Prior to this division, the smallest of the six lots measured approximately 90 feet by 221 feet, or 19,890 square feet. *Page 1124