## DORA M. WHITEHOUSE

### *vs.*

### EUGENE W. WHITEHOUSE, and another, Executors.

## Kennebec. Opinion July 1, 1897.

*Trust. Consideration. Delivery. Contract. Gift. Check. Practice.*

The defendants' testate agreed with the plaintiff that, if she would renew an engagement of marriage with him which he had broken without just cause, he would, in case he died without marrying her, provide her at his decease with property enough to support her for her lifetime without the necessity of any labor on her part. Some time afterwards while in failing health, not having married her, and deeming that his indebtedness to her on that account would be five thousand dollars. he made a check to her for that sum, depositing the same in his safe in his office in a sealed envelope addressed to an uncle of hers in trust for her benefit. After that he said to the uncle in his office where the safe was: " There is a sealed package in my safe assigned to you, placed there for safe keeping, and that package I deliver to you in trust for Dora M. Whitehouse [plaintiff.] I have not mentioned her in my

will for the reason that what that package contains belongs to her. My brother knows all about this, and at my death he will open the safe and deliver the package to you, and I entrust you to give the contents to Dora for the contents belong to her." The uncle assented and upon communicating the fact to his niece she also assented thereto. The package addressed to the uncle with an indorsement to " deliver at once," contained an envelope directed to the plaintiff containing the check in suit.

*Held;* that the transaction amounted to a declaration of trust founded upon a valuable consideration with a symbolical or constructive delivery.

The doctrine that the donor's own check may not be the subject of a donation causa mortis does not apply when such check is given for a valuable consideration received by the donor in his lifetime. In such case there is a contract as well as a trust.

It is immaterial that the check bore a date, whether by design or mistake, several months later than the date of the death of the person executing it.

Objection to the amendment of a declaration becomes immaterial when the verdict is sustained without any aid from the amendment.

ON MOTION AND EXCEPTIONS.

This was an action of assumpsit, the original writ containing three counts; one upon an account annexed for services amounting to $1057; the second to recover the sum of $5000, for money had and received; and the third upon an account annexed for $988 for board.

At the March Term, 1896, the plaintiff filed an amendment to said writ, the allowance of which was seasonably objected to by the defendants, but the court allowed the same subject to defendants' objection.

To the ruling of the court in allowing this amendment the defendants excepted. No evidence was introduced in regard to the two accounts annexed and no claim was made to recover upon either of them.

The defendants requested the court to instruct the jury, as a matter of law, that this action could not be maintained upon the evidence, and that the jury were not authorized to give a verdict for the plaintiff upon the evidence in relation to the action as it stood upon the pleadings. The court declined to give such instruction, but instead thereof instructed the jury as follows:

"I instruct you, as a matter of law, that if these parties were engaged, if the time of their marriage was fixed and postponed at

his request and, in consideration of her assenting to the postponement, he made the arrangement which has been testified to, that he would give her of his estate sufficient for her support without work, for the rest of her life, and if for the purpose of fulfilling in whole or in part the obligation that rested upon him by reason of that special promise he did draw this check and place it in that envelope, drawing it in favor of the plaintiff, directing the envelope to Mr. Taylor, explaining to him the object and the beneficiary of whatever was contained in that envelope, and if the check was retained, as it is admitted to have been retained, by the executors after they came into possession of his estate, then there is money to the extent of the amount of this check in the hands of the executors as a part of the estate of Dr. Tibbetts, which in equity and good conscience belongs to the plaintiff and which she can recover in this action and in this form of action."

To the ruling of the court declining to give the instruction above requested and giving the instruction above quoted, the defendants excepted.

The jury returned a verdict for the plaintiff, and the defendants also filed a general motion for a new trial. The defendants offered no evidence.

The case is stated in the opinion.

(Amended Declaration.) Also, for that said Tibbetts, in his lifetime, on the twenty-second day of November, 1886, being then sole and unmarried, at said Vassalboro, to wit: at said Augusta, in consideration that the plaintiff, then also sole and unmarried, then and there promised said Tibbetts that she would marry and take him to husband, promised the plaintiff to marry her and take her to wife on New Year's day meaning the first day of January, 1887; and afterwards said marriage was by mutual consent postponed until Thanksgiving Day, 1889, being the twenty-eighth day of November, 1889; and afterwards prior to said 28th day of November, 1889, at the request of said Tibbetts in consideration that the plaintiff would not insist on the performance of his said contract on the date agreed, but would again defer the date of their marriage and would not cancel their said

engagement but would permit it still to subsist, said Tibbetts then and there promised the plaintiff that, if he should die before marriage to the plaintiff, he would leave her enough of his property to support her abundantly throughout her life, without any necessity for labor on her part.

And the plaintiff avers that, in reliance upon said agreement by said Tibbetts and solely because thereof, she waived the performance of his said contract on the date agreed and assented to this last named postponement of her said marriage to said Tibbetts, and did not cancel her said engagement of marriage, but suffered the same still to subsist down to the time of said Tibbetts' death ; and the plaintiff avers that said Tibbetts died on the 19th day of September, 1892, and that he did not marry the plaintiff at any time before his death, and that the amount necessary for her abundant support, without labor, during her life, was five thousand dollars, and that, in consequence of the promise of said Tibbetts herein recited, the estate of said Tibbetts, in the hands of the defendants as his executors, became liable, and in consideration thereof, promised to pay the plaintiff said sum on demand, but has never paid the same, and said executors still neglect and refuse so to do. And the plaintiff avers that, in pursuance of said Tibbetts' agreement as hereinbefore set forth, and in part performance thereof, he did, in his lifetime, leave for her use and benefit, at his death, a check for five thousand dollars signed by him and payable to her, being the same check set forth in the specification under the second count of this writ, which check came into the possession of said executors; but that said defendants refused to deliver her said check, but converted the same and the proceeds thereof to the use of said estate, and have retained the same and refused to pay over any part thereof to the plaintiff. Whereby the plaintiff says that said defendants hold said sum of five thousand dollars, and the interest thereon, as money which in equity and good conscience belongs to the plaintiff and should be paid to her.

The facts appear in the opinion.

*O. D. Baker* and *F. L. Staples*, for plaintiff.

*L. C. Cornish; E. W. Whitehouse* and *W. H. Fisher*, for defendants.

Where the donor has the legal title and the property is of such a nature that a legal estate can be transferred, that is, in land, chattels, money, etc., an imperfect conveyance or assignment which does not pass the legal title will not be aided in equity. If a party makes himself trustee, no transfer of the subject matter of the trust is necessary; but if he selects a third party the subject of the trust must be transferred to him in such mode as will be effectual to pass the legal title. *Dickerson's Appeal,* 115 Pa. St. p. 193.

In *Milroy* v. *Lord,* 4 De G. F. & J. 264, the deceased gave a written declaration of trust conveying certain bank shares to A to hold in trust for B, with power of attorney for transfer; but the shares were never transferred and the court held that the legal title never changed; that the transaction constituted an imperfect gift but no trust.

Dr. Tibbetts' acts constituted at best an imperfect gift, and the estate cannot be held for the amount in the bank represented by this check any more than estates could be held for deposits in savings banks in similar cases of imperfect gift. *Savings Bank* v. *Fogg,* 82 Maine, 538.

Amendments not allowable: R. S., c. 82, § 10; *Annis* v. *Gilmore,* 47 Maine, 152; *Ball* v. *Claflin,* 5 Pick. 303.

Motion: It is not to be denied that there was a contract of marriage between these parties. It is also probable that the allegations in the second writ, namely, the writ on the breach of promise of marriage are true; it is also true that Dr. Tibbetts left a check in the form and in the manner described in the evidence. We claim, however, that the action of Dr. Tibbetts was simply an imperfect gift or imperfect trust; that no part of his estate passed to the plaintiff because of the same, and that the plaintiff cannot maintain an action in this form against the executors to recover the proceeds.

SITTING: PETERS, C. J., FOSTER, HASKELL, WHITEHOUSE, STROUT, JJ.

PETERS, C. J. The plaintiff presents a very meritorious claim, in this equitable action of money had and received, for the

recovery of the amount of a check on a Waterville bank, running to her for the sum of $5000, and executed by Dr. Benjamin L. Tibbetts of whose estate the defendants are executors. The consideration for the check was an indebtedness for that sum or more due her from him in his lifetime, the indebtedness growing out of their relations while engaged to be married to each other. The matrimonial engagement had existed between them for sixteen or more years, commencing in her earliest womanhood and ending when he died September 19th, 1892. He was a widower during the period of their engagement, and much her senior in years.

During their engagement a day for their marriage had been several times appointed by them, and when such day arrived he had habitually made some excuse for requesting its postponement. Finally, on Thanksgiving Day in 1889, upon his again failing to keep his agreement to be married on that day, feeling that her self-respect would no longer permit such repetitions of broken promises, and being strongly influenced thereto by the wishes of her mother, she resolved to discontinue further relations with him, and refused to again renew or continue their engagement of marriage. Shortly afterwards, however, besieged by his apparently sincere promises and protestations, she became induced to consent to a renewal of the engagement, in consideration of his agreement, expressly declared in the presence of her mother, that, if she would consent to a renewal of the engagement and a reasonable postponement of the marriage, and he should die before a marriage between them took place, he would provide her with an amount out of his estate which would be enough for her support for the rest of her life without labor. Thereupon the engagement continued, for better or worse, until he died, and they never were married to each other.

The sequel is told by Mr. Taylor, an uncle of the plaintiff, whose testimony we quote: "I am an uncle to Dora M. Whitehouse. (I am knowing to the fact that for sixteen or seventeen years before his death Dr. Tibbetts was understood to be engaged to Miss Whitehouse,) and during all that time was on intimate terms with her and her family; that in the summer of 1892, dur-

ing hot weather, I called one day on Dr. Tibbetts, and he said to me, when I went into his office and passed the time of day, 'Good morning, I am very glad you called for I have some important business with you,' and I replied, 'All right,' then the doctor said to me: 'There is a sealed package in my safe assigned to you, placed there for safe keeping, and that package I deliver to you in trust for Dora M. Whitehouse. I have not named Dora's name in my will for the reason that what that package contains belongs to her; my brother knows all about this, and at my death he will open the safe and give the package to you, and I entrust you to give the package to Dora for the contents belong to her.' I said, 'All right.' Just previous to the words above stated I asked Dr. Tibbetts when I entered his office how he was, and he said, 'Well, poorly; if something don't take place in my favor pretty soon I can't stand it a great while.' That is all the conversation we had on that subject.

"On the morning just after Dr. Tibbetts' death I was at the house and saw the doctor's brother, Samuel Tibbetts, one of the executors, in presence of Dr. Mabry, and I said to Mr. Tibbetts: 'There is a package in that safe belongs to me,' and he replied: 'I have not time to get it now for we are in a hurry laying out the doctor;' said he: 'I am coming down in a short time after the funeral to open the safe, and then I will hand it to you; I will notify you when I am coming,—what is your post office address?' and I told him it was South Vassalboro. Said I: 'Give me a piece of paper and I will write it down,' and then Dr. Mabry said: 'I know his post office address, and if you forget it I can tell you.' I answered: 'All right,' and that ended the conversation with us there. I received no notice of the time the safe was opened, and Tibbetts never did deliver to me the package which was in the safe. Afterwards, on or about the 3d of April, 1893, I had a talk with Tibbetts, the executor, in the office and in the presence of E. W. Whitehouse, and then demanded the package and check, but I never got it, as he declined to give it to me.

"Dr. Tibbetts died September 19, 1892.

"The same day that Dr. Tibbetts delivered to me the package

in trust when I got home I said to Dora:  'I have got something to tell you,' and she replied: 'What is it?' I said: 'Dr. Tibbetts has left a package delivered to me in trust for you.' (She replied: 'The doctor told me that if he died before we were married I should be well provided for.') Neither Dora nor I knew what the package contained until after the death of Dr. Tibbetts.

"Dr. Mabry, S. S. Brown, Samuel Tibbetts and S. S. Lightbody were present when the safe was opened and saw Brown take and break open the package."

Upon the interpretation to be given to the testimony of Mr. Taylor, in connection with the other facts previously stated, depends the question whether the present action is maintainable. It may not be amiss, however, to add that the plaintiff for all the time she was engaged to the doctor was attentive to his welfare and interests by a continual service expended in keeping his books and drawing off his accounts, doing his washing, mending and making clothes for him, and other like services.

When the interview was had with the uncle of the plaintiff by the doctor, only about a month before his death, the doctor evidently believed his last sickness was upon him, and he knew that the contemplated marriage was then a most improbable if not impossible thing. There may be some doubt if he ever intended to consummate the engagement by marriage, but her faith in him never failed, although it faltered at a time. · But he no doubt sincerely intended to keep his promise to provide sufficiently for her out of his estate. He calculated in his own mind that five thousand dollars would be equal to the provision promised her, and he drew the check for that amount as payment of that sum, or as security for its payment. The act speaks for itself with no uncertainty. He says " this package belongs to her, " thereby admitting his indebtedness to her for that amount.

There was, according to this evidence, at least a most significant constructive delivery of the package and its contents to Mr. Taylor, while he was in the office where the safe was in which the package was deposited; he assenting to the confidential instruc-

tions imparted to him, and, although not knowing exactly what the package contained, believing that the contents were valuable, and appreciating the nature of the trust committed to him. The package thereafter remained in the safe until the doctor's death, the latter intending to make, and undoubtedly supposing he had made, a sufficient and legal delivery of the package to the trustee. The plaintiff approved of the transaction when informed of it.

We might, no doubt, safely stop at this point in the discussion, allowing the validity of the check to depend on a declaration of trust which is exhibited by the case, according to the principle in equity settled in the late case of *Bath Savings Institution* v. *Hathorn*, 88 Maine, 122, and *Norway Savings Bank* v. *Merriam*, *Idem*, 146. But we think this case has stronger grounds to rest upon than those cases have, and that, while he resorted to some of the forms of a trust in order to effectuate his intention, the doctor was endeavoring, by what he did, to secure to the plaintiff the payment of five thousand dollars which he conceived would be due her under his agreement that he would provide her with enough out of his estate to support her without labor on her part during her lifetime. The sum due her from the nature of such a contract would be a claim against his estate after his death; but the contract was a subsisting obligation binding him while he lived. An action would lie on the original contract, or on the check tendered by him as a settlement and payment of such contract, and accepted by the plaintiff accordingly.

To be sure, the check did not come to her hands in the lifetime of the drawer. Nor did it need to in order to be valid by delivery. The delivery to the uncle inured to the benefit of the niece, on the principle that where a deed or other instrument of title is delivered by a grantor in his lifetime to a third person with directions to deliver the same to the grantee after the grantor's death, and such after-delivery is made, the title under such deed or instrument takes effect at the date of the first delivery. This is because of the effect of the relation between the two acts of delivery. Says Chief Justice Shaw, in *Foster* v. *Mansfield*, 5 Met. 412, where the principle is clearly discussed: "When the future delivery is to

depend on the payment of money or the performance of some other condition, it will be deemed an escrow. When it is merely to await the lapse of time, or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently." In the case cited it was a deed of land which received a first and a second delivery. But the doctrine is just as logically applicable in the case of the delivery of a bond, check, note, certificate of stock, or any other instrument or muniment of title.

It is argued that the second delivery never took place inasmuch as the check did not at any time, even after the doctor's death, come into the hands of the plaintiff. The answer to such suggestion is that her demand for the check and the defendants' refusal to deliver it was in effect equivalent to a second delivery. Equity would have compelled any person having the check to surrender it to the plaintiff, and the law would allow an action for its conversion against any persons who had secreted or despoiled the same. The defendants are estopped from asserting such a point of defense.

Nor can the defense successfully rely on the doctrine that a check cannot be the subject of a donatio mortis causa unless the check be presented and paid in the lifetime of the donor; a check, not supported by value received, being considered under such circumstances as of a testamentary character. That is, a man may not donate what is merely his own naked promise. The objection does not lie here because the check in the present instance was not a gift of any kind, but a contract founded on a full and even overflowing consideration. Mr. Perry, in his book on Trusts, (vol. 1, § 95,) says : "Where an agreement is entered into for a valuable and legal consideration, and a trust is intended, the mere form of the instrument is not very material, for if the trust is not perfectly executed or created by the instrument, a court of equity may enforce it as a contract." The case of *Morrill* v. *Peaslee*, 146 Mass. 460, in some of its features bears a resemblance to the present case. It appeared there that a married woman separated from her husband for extreme cruelty practiced upon her by him,

and had applied for a divorce and alimony. During the pendency of the divorce proceedings, she was induced to return to cohabitation with him on his giving a note for $5000, to a trustee for her benefit, the note not to be collected during his lifetime, but afterwards out of his estate, provided she cohabited with him thereafter so long as he lived, and she did so. A majority of the court refused to sustain an action brought by the trustee on the note against the executors of the husband, but only on the ground that there was no consideration for the note, inasmuch as it was her duty to return to her husband if she could live with him. Three members of the court dissented in a separate opinion, which Mr. Perry, in the section of his work before cited, characterizes as "far weightier" than the opinion of the court.

The plaintiff was the legal owner of a check, or if not the legal surely the equitable owner, which amounted to an appropriation of $5000 for her use by the drawer of such check, according to the case of *Emery* v. *Hobson*, 63 Maine, 32; and in equity was an assignment of so much of the drawer's funds as amounted to that sum, according to the case of *National Exchange Bank* v. *McLoon*, 73 Maine, 498; and those funds have been wrongfully covered into the estate of the drawer of the check by his executors. Those funds should be restored to the true owner, and the law and equity conspire together in requiring such restoration.

It is immaterial that the check turned out, either by design or mistake, to bear a date some months later than the date of the death of the person executing it.

The amendment to the declaration, to which an exception was taken, becomes of no consequence, as the verdict is sustained without the aid of any amendment.

*Motion and Exceptions overruled.*