## EMILY SHARP *vs.* GEORGE ROPES, JR.

J. S., the owner of a tract of land, laid it out in lots, and recorded in the registry of deeds a plan showing the streets and lots, with their dimensions. On the north side of one of the streets were five lots, numbered consecutively from 6 to 10, and on the south side a large lot. J. S. conveyed this large lot without restriction, and built a house on lot 10, standing twenty feet back from the street. He then conveyed lot 8, and part of lot 7, to the plaintiff's grantor, by deeds containing a provision that for fifteen years no building should be placed on the granted premises within twenty feet of the street, and no trade offensive to dwelling-houses in that neighborhood should be carried on; and that a violation of either of these restrictions should not work a forfeiture, but that J. S., his heirs or devisees, might enter upon the land and remove anything violating the restrictions. J. S. afterwards conveyed the rest of lot 7 and also lot 6 to the defendant, by deeds containing the same provision. *Held,* that the plaintiff could not maintain a bill in equity to restrain the defendant from erecting a building on lot 6 within twenty feet of the street.

BILL IN EQUITY, filed July 10, 1872, alleging that Stephen Heath in 1865, being the owner of a parcel of land on a way, now called Gordon Street, in West Roxbury, laid it out in lots; that he conveyed lot 8 and part of lot 7 to George G. Drew, by deeds containing the following provision : " That for the term of fifteen years from the first day of January 1866, no building shall be erected or placed on said land, the main part of which shall come within twenty feet of said street or way ; and the main part of any such building shall not be less than two stories high exclusive of basement and attic ; and that no trade or manufacture injurious or offensive to dwelling-houses, or their occupants in that neighborhood, shall be carried on, and no livery stable or swine shall be kept on said land during said time. A violation of either of said restrictions shall not make a forfeiture of the estate, but in case of any such violation, said Heath, his heirs or devisees, may enter upon said land, and abate or remove, forcibly if necessary, anything erected, placed or kept therein, in violation of said restrictions, and at the expense of the guilty party ; " that the land has since been conveyed to the plaintiff by deeds containing the same provision ; that after the conveyance to Drew, Heath conveyed lot 6 and the rest of lot 7 to the defendant, by deeds containing the same provision ; and that the defendant knew that the restrictions were for the benefit of all the lots ; but that he

was nevertheless proceeding to erect a building on lot 6 within twenty feet of Gordon Street. The prayer was that he might be restrained from so doing. The case was reserved by *Gray*, J., for the determination of the full court, on the pleadings and an agreed statement of facts, substantially as follows:

In 1865, Stephen Heath, a house builder, being the owner of a parcel of land in West Roxbury, laid it out in lots for building purposes, according to a plan, dated March 25, 1865, and recorded in the registry of deeds for the county, and the material part of which is copied in the margin.* The way, thirty feet wide, laid down on the plan, is now a public highway, called Gordon Street.

By deed dated December 23, 1865, and recorded March 1, 1866, Heath conveyed to George G. Drew lot 8, and by deed dated June 27, 1866, and recorded July 12, 1866, he conveyed to him a strip of lot 7, adjacent to lot 8. Both these deeds contained the provision set out in the bill. Drew immediately built a house upon the land conveyed to him, and the land has since been conveyed to the plaintiff by deeds containing the same pro-

vision.   Before the deeds to Drew, Heath erected on lot 10 a dwelling-house, no part of which was within twenty feet of the way, and of this house he remained the owner until his death ; but he lived a mile distant.

By deed dated June 27, 1866, and recorded September 7, 1866, Heath conveyed to the defendant the rest of lot 7 and the northern part of lot 6 ; and by deed dated February 27, 1867, and recorded March 11, 1867, he conveyed to the defendant the southern part of lot 6.   Both these deeds contained the same provision as the deeds to Drew.

In all the deeds to Drew and the defendant, the granted premises were described by reference to the plan on record.

By deed dated March 27, 1865, Heath had conveyed lot 11 by a deed containing no restrictions whatever.   He conveyed lots 3 and 4 by deeds dated respectively November 1, 1865, and January 1, 1867, and lots 1 and 2 by deed dated April 1, 1868, all these deeds containing the same provision as the deeds to Drew and the defendant, except that the buildings, instead of being required not to come within twenty feet of Gordon Street, were required not to come within, fifteen feet of Green Street ; and he conveyed lot 5 by a deed dated May 27, 1867, containing no provision as to the distance from Green Street within which a building might not be erected.   In 1868, Heath died, leaving a will, by which he devised lots 9 and 10 to his widow, Susan B. Heath, who was his executrix, and who, with her family, has lived in the house on lot 10 for two years.

The defendant was proceeding to erect a large building on the southern part of lot 6, within four feet of Gordon Street.   The plaintiff asked Susan B. Heath to prevent the erection of the building, but she refused, and verbally consented to its erection.

If it is competent evidence, it was agreed to be a fact that when the defendant took his deed of February 27, 1867, he had no knowledge that there was any restriction in any deed from Heath to any one else ; and that Heath stated to him " that he would waive the restriction if he insisted upon it, that he did not consider it amounted to much, that the property would have to be used for shops in a short time, and that the defendant would

not be troubled if he built a shop next to Gordon Street." The case was submitted on briefs.

*R. Olney*, for the plaintiff, besides the cases referred to in the opinion, cited *Schwœrer* v. *Boylston Market Association*, 99 Mass. 285 ; *Maine* v. *Cumston*, 98 Mass. 317.

*T. P. Proctor, W. W. Warren & H. R. Brigham*, for the defendant.

AMES, J.  The case finds that Stephen Heath, being the owner of the entire tract of land, caused it to be laid out in eleven separate building lots.  A plan, showing the streets that were to be opened, and the different lots, with their respective dimensions, areas and numbers, was duly recorded in the registry of deeds ; but this plan furnishes no intimation of an intention on the part of the grantor to impose any restriction whatever upon purchasers, in regard to the manner in which they were to occupy or build upon the lots which they should purchase.  Of the five lots upon the northerly side of Gordon Street, lot 10 was built upon by the grantor himself, he having erected a dwelling-house thereon, which has been occupied by his family since his decease.  Lot 8 and a portion of lot 7 were sold and conveyed by him to George G. Drew, and have since been conveyed to the plaintiff.  The remainder of lot 7 and the whole of lot 6 were conveyed to the defendant.  Thus, of the five lots lying on the northerly side of that street, three were conveyed by said Heath to two separate purchasers, subject to the conditions and restrictions recited in the plaintiff's bill.  There is no suggestion that the other two lots were subjected to any restriction of the kind.

It is not claimed that, in regard to any of the lots, there was any written covenant by the grantor, and it does not appear that there was any express stipulation or direct assurance on his part, that any person who should purchase a lot on the north side of that street should have the benefit of a restriction binding all the other purchasers to leave an open space between their dwelling-houses and the street.  The only ground upon which the plaintiff can rest her claim that the restriction in question was intended to operate for the benefit of all the purchasers, and to establish a general plan of building, by which each one would acquire a right

in the nature of an easement in the land purchased by the others, is to be found in the fact, that in his transactions with two separate and independent purchasers, the grantor conveyed a portion of the land in each case, subject to the terms and conditions set forth in the bill of complaint. It is true that, of these conditions, the one prohibiting the prosecution of any offensive trade or manufacture upon the premises, or the using of them for the keeping of swine, or of a livery stable, would in practice be beneficial to the neighborhood generally. But it is to be remembered that the grantor had himself built a dwelling-house in that immediate neighborhood, and the provision which he made for the prevention of nuisances may have been intended for the benefit of that particular house.

It is undoubtedly true, and has often been decided, that where a tract of land is subdivided into lots, and those lots are conveyed to separate purchasers, subject to conditions that are of a nature to operate as inducements to the purchase, and to give to each purchaser the benefit of a general plan of building or occupation, so that each shall have attached to his own lot a right in the nature of an easement or incorporeal hereditament in the lots of the others, a right is thereby acquired by each grantee which he may enforce against any other grantee. *Whitney* v. *Union Railway Co.* 11 Gray, 359. *Parker* v. *Nightingale*, 6 Allen, 341. *Linzee* v. *Mixer*, 101 Mass. 512. *Tulk* v. *Moxhay*, 2 Phil. Ch. 774. But in the case at bar there is nothing from which the court can infer that the restriction contained in the deed from Heath to the defendant was intended for the benefit of the estate now owned by the plaintiff. No such purpose can be gathered from the plan, or from the situation of the property with reference to other land of the grantor. It purports to be a condition imposed by the grantor, and the deed points out the mode in which he, his heirs or devisees may enforce it. Neither of the deeds, under which these parties respectively claim, purports to give to the grantee any such right against any other grantee. For aught that appears, the condition may have been intended for the benefit of the grantor or his family, as long as they continued to own the dwelling-house. The burden of proof is upon the plaintiff, if she in-

sists upon giving to that condition any wider application, and this burden we do not find that she has sustained.

The cases cited and relied upon by the plaintiff's counsel do not appear to us to meet this difficulty. In *Tallmadge* v. *East River Bank*, 26 N. Y. 105, a landowner in New York City had laid out a street sixty feet in width, and had sold the building lots on each side, making use in the sales of a plan which showed that an open space was to be reserved in front of each lot. The purchasers bought under this plan, and with the express assurance that it should be adhered to, and their right to enjoy the promised advantages was sustained by the court. In *Hills* v. *Miller*, 3 Paige, 254, the owner had sold a tract of land, giving at the same time a bond that a smaller triangular lot belonging to him, in front of the lot sold, should not be occupied with buildings. The court held that the deed and the bond constituted one contract, and created an easement which could be enforced against any purchaser of the triangular lot, with notice. In *Barrow* v. *Richard*, 8 Paige, 351, an estate had been subdivided into a large number of building lots, which the owner had conveyed by deeds to various purchasers, with express covenants against all trades, &c., offensive to "the neighboring inhabitants." The English cases also cited, *Child* v. *Douglas*, Kay, 560, *Coles* v. *Sims*, 5 De G., M. & G. 1, and *Western* v. *MacDermott*, L. R. 2 Ch. 72, are all of them cases in which a general building plan, or uniform system and mode of occupation, had been distinctly established and made a part of the title conveyed, in express terms, either by the deed itself, or by some covenant or obligation connected with it by reference. But we find nothing in the terms of the conveyance, or in any reference to a plan or covenant, or in the circumstances of the transaction, or the situation of the property, that will justify us in saying that any such general plan or system was intended by the grantor to be established for the benefit of grantees, or to make a part of their respective titles. The case in our judgment is closely analogous to *Badger* v. *Boardman*, 16 Gray, 559, *Jewell* v. *Lee*, 14 Allen, 145, *Hubbell* v. *Warren*, 8 Allen. 173, 178, and is disposed of according to the law decided in these cases, by an order that the        *Bill be dismissed, with costs.*