Marie C. Toothaker and Luther Perkins v. Jeffry Pleasant, Appellant.

Division One, November 15, 1926.

1. **APPELLATE JURISDICTION**: Injunction: Title to Real Estate. If the judgment to be rendered must directly affect title to real estate, this court has appellate jurisdiction; and a suit in equity to enjoin defendant, a negro woman, from occupying described real estate, on the ground that the deed from the original grantor, under which plaintiffs and defendant have by mesne conveyances become the grantees of adjoining lots, contained a covenant that "as a part of the consideration the grantee for himself and his successors and assigns and grantees agree not to sell or assign or rent any of said property to a negro for a period of. at least fifteen years from this date," directly, and not incidentally, involves title to real estate, where such restrictive covenant is set out in haec verba and it is both alleged and denied that it runs with and is a burden upon the title of the lot, and was the basis of the decree for plaintiffs, since such decree necessarily adjudged the nature and extent of defendant's title.

2. **CONVEYANCE**: Restrictive Covenant: Test: Benefit to Land. In a suit in equity to enforce a restrictive covenant contained in a deed, the primary inquiry is whether the restrictive use was imposed upon the land owned by defendant for the benefit of the land owned by plaintiffs, and if it was not its occupancy by defendant cannot be enjoined; and in answering the inquiry, the intention of the parties to the original deed creating the restrictive covenant must be sought, both from the language of the covenant itself, and its language when read in the light of its context and of the surrounding circumstances when the covenant was made.

3. ————: ————: For Benefit of Grantor: Remote Grantees. A restrictive covenant in a deed that "as a part of the consideration the grantee for himself and for his successors and assigns and grantees agree not to sell or assign or rent any of said property to a negro for a period at least of fifteen years from this date" is, in the absence of proof of a contrary intention, to be considered as having been made by the grantee for the benefit of the grantor or for land retained by him. And where said grantee conveyed a part of the land to one grantee, who in turn conveyed to plaintiffs, and another part to another grantee, who in turn conveyed to defendant, a negro woman, none of which mesne conveyances mentioned the restrictive covenant, such restrictive covenant was not imposed on defendant's lot for the benefit of plaintiffs' lots; and whatever may be the right of the original grantor to enforce the covenant, the plaintiffs cannot avail themselves of such right, because there is no privity, either of contract or estate, between them and such original covenantee, and they are not shown to be grantees of land retained by him, nor is it shown that he retained any land in the vicinity.

4. ————: ————: For Benefit of Land Retained by Grantee: Burden of Proof. The absence of evidence that the grantor retained other land in the vicinity will not authorize a holding that the restrictive covenant in his deed was made for the benefit of the grantee and his remote grantees. The burden rests upon the remote grantees of a part of the land who seek to enforce the restrictive covenant against a remote grantee of another part, to show, either by the language of the covenant itself or by extraneous facts and circumstances, that the restrictive covenant contained in the original deed was intended by its parties for the benefit of the land conveyed by it, and not for the personal benefit of its grantor or for the benefit of land retained by him at the time.

**5. CONVEYANCE: Restrictive Covenant: Conveyance of Entire Tract: Restriction upon Grantee.** Where the grantee in the deed containing the restrictive covenant and his immediate grantee acquired title to the entire tract, and neither derived any benefit from the covenant, each in turn had the right to convey the entire tract or any part thereof free from any restrictions whatever, except as against the original grantor or covenantee, or one standing in his stead and in privity with him, and the restrictive covenant was not imposed upon their remote grantees by deeds which made no reference to it.

**6. ——: ——: Continuance by Deed of Subsequent Grantee.** A recital in the deed made by a subsequent grantee of the entire tract, by which she conveyed a part of it, that "this deed is made subject to all incumbrances of record affecting said above described premises," cannot be said to be a continuation, upon said part, for the benefit of the rest of the tract, of a restrictive covenant contained in the recorded deed of her remote grantor, where she at the time had already parted with her interest in the rest of the tract.

---

Corpus Juris-Cyc. References: **Appeal and Error**, 3 C. J., Section 125, p. 369, n. 30; Section 128, p. 372, n. 53. **Courts**, 15 C. J., Section 513, p. 1085, n. 87, 88, 89, 90. **Covenants**, 15 C. J., Section 65, p. 1249, n. 35; Section 73, p. 1254, n. 23 New; Section 76, p. 1256, n. 47, 48, 49; p. 1257, n. 54, 55, 56; Section 80, p. 1259, n. 96 New; Section 85, p. 1261, n. 19 New; Section 188, p. 1299, n. 1, 2, 3; p. 1300, n. 21, 22. **Deeds**, 18 C. J., Section 460, p. 396, n. 38, 39; p. 397, n. 50 New. **Injunctions**, 32 C. J., Section 320, p. 207, n. 73; Section 579, p. 348, n. 29.

Appeal from Jackson Circuit Court.—*Hon. James H. Austin,* Judge.

REVERSED (*with directions*).

*Cleary & Barnett* and *John R. James* for appellant.

(1) The language alleged to constitute a restriction in the deed from Hall to Myers is merely a personal agreement between Hall and Myers, not a covenant running with the land. Devlin on Real Estate, p. 1858; 18 C. J. p. 396, sec. 460; Berryman v. Hotel Savoy Co., 160 Cal. 559; Kelly v. Hall, 96 Ohio St. 374. (2) Even though the alleged restriction be a covenant running with the land and imposing a burden upon the property described in the Hall deed, remote grantees of one portion of the lots conveyed have no right to enforce it against a remote grantee of another part of the same lots such as appellant. Korn v. Campbell, 37 L. R. A. (N. S.) 1, and note; Berryman v. Hotel Savoy Co., 37 L. R. A. 5 and notes pp. 12 to 37; Doerr v. Cobbs, 146 Mo. App. 342; Coughlin v. Barker, 46 Mo. App. 54; 2 Tiffany on Real Property (2 Ed.) p. 1466; Jewell v. Lee, 14 Allen (Mass.) 145; Dana v. Wentworth, 111 Mass. 291; Kelly v. Hall, 96 Ohio St. 374; Graham v. Hite, 93 Ky. 474. (3) The character of the neighborhood in which the property in question is located and the colored occupancy of the surrounding property have made the so-called restriction impracticable, unworkable, unenforceable and

invalid. Koehler v. Roland, 275 Mo. 575; Moore v. Curry, 176 Mich. 456; Kneip v. Schroeder, 255 Ill. 621; Devlin on Real Estate, sec. 991, C; Thompson v. Langen, 172 Mo. App. 83. (4) Courts favor the unrestricted use of real property and when there is any doubt in the language it must be resolved in favor of the free use of the property. Sanders v. Dixon, 114 Mo. App. 229; Owens v. Trail, 302 Mo. 292; Kitchen v. Howley, 150 Mo. App. 497; Kenwood Land Co. v. Hancock Inv. Co., 169 Mo. App. 715; Scharer v. Pantler, 127 Mo. App. 433; Loomis v. Collins, 272 Ill. 22.

*G. C. Weatherby* and *Roy N. Devault* for respondent.

(1) The covenant was not merely a personal agreement between Hall and Myers, nor for this reason was the covenant destroyed by the act of Myers in conveying to Bessie Kinley without expressly renewing it. A solemn agreement was made whereby grantee agreed, not only on behalf of himself, but on behalf of his successors, assigns and grantees, that he or they, or any of them would not sell, assign or rent any of said property to a negro within fifteen years from that date. The purpose of the parties should be kept in mind. Godfrey v. Hampton, 148 Mo. App. 157; Kenwood Land Co. v. Inv. Co., 169 Mo. App. 715; Kitchen v. Hawley, 150 Mo. App. 497. (2) There was no evidence showing that Hall retained any land in the vicinity of the property he conveyed to Myers. The covenant, therefore, was not for his benefit, or as is sometimes referred to, for the benefit of land retained by him. It must have been then for the benefit of the grantee, and, as the covenant recites, for his successors, assigns and grantees. The burden of the agreement is upon the grantee and his grantees. (3) It is contended that inasmuch as Kinley conveyed the west property without repeating the words of the restriction it was waived or relinquished. This claim must be due to a misapprehension. If the covenant was purely personal to the grantee there was nothing to waive. On the other hand, if the covenant was personal to the extent it benefited the land, as we claim, a failure to recite it in a subsequent conveyance could not operate to remove it. *Mesne* conveyances omitting the language of the covenant, or failing to refer to it, where that covenant is one that confers a benefit or imposes a burden upon the land, do not operate to release the land from the effects of the covenant or restriction. Johnson v. Johnson, 170 Mo. 49.

SEDDON, C.—Action in equity to enjoin defendant (appellant here), who is a negro woman, from occupying certain improved real property in Kansas City, Missouri, owned by her and described as the west 42½ feet of lots 3 and 4, block 2, in Dalcoulin, a platted addition

in said city, and from selling, renting or leasing the same to negroes, or otherwise permitting the use or occupancy of said property by negroes, until September 28, 1930. Plaintiffs (respondents here) are white persons and are the record owners of the east 99½ feet (except 5 feet taken and used for street purposes) of said lots 3 and 4, block 2, in Dalcoulin Addition, adjacent to defendant's property and lying immediately east thereof. A temporary injunction issued, and, upon final hearing on the merits, a decree was entered by which the injunction was made permanent and a monetary judgment was awarded plaintiffs against defendant in the sum of $776.25 for alleged loss of rentals from their property. Defendant, after the customary preliminary steps, has appealed to this court.

The salient facts, as gathered from the record before us, are these: Lots 3 and 4, block 2, in Dalcoulin Addition, as originally platted, had a length or depth of 142 feet. Subsequently, the east five feet of said lots was taken or dedicated for public use as a part of Brooklyn Avenue in said city. The lots in question are situate at the northwest corner of Brooklyn and Howard Avenues. Brooklyn Avenue is a north-and-south street, and Howard Avenue is an east-and-west street. The width, or short frontage, of said lots is on Brooklyn Avenue, while the depth, or long frontage, of the lots is on Howard Avenue. The lots in question occupy the southeast corner of a rectangular city block, bounded on the east by Brooklyn Avenue, on the south by Howard Avenue, on the west by Garfield Avenue and on the north by Twenty-fourth Street.

The entire tract, that is, all of said lots 3 and 4, was originally owned by one Walter M. Hall. On September 28, 1915, said Walter M. Hall and his wife, Anna C. Hall, conveyed the whole of said lots by warranty deed dated the same day, to one Fay Myers for a valuable consideration expressed in said deed. The deed from Hall and wife to Myers contained this covenant or recital: "As a part of the consideration, the grantee for himself and his successors and assigns and grantees agree not to sell or assign or rent any of said property to a negro for a period at least of fifteen years from this date." This action hinges upon the quoted recital or covenant of said deed, which was duly recorded in the Recorder of Deed's office at Kansas City, Jackson County, Missouri, on October 26, 1915.

On September 27, 1915, Fay Myers executed and delivered a deed of trust, whereby the east 94½ feet of said lots 3 and 4 was conveyed to Joseph F. Keirnan, trustee for the National Association of Letter Carriers of United States of America, a corporation, to secure to said corporation the payment of certain promissory notes therein described. This deed of trust makes no reference to the restrictive covenant or recital contained in the warranty deed from Hall and

wife .to Myers. Said deed of trust was also duly recorded, on October 26, 1915.

On September 28, 1915, Fay Myers conveyed the whole of said two lots, as one tract or parcel of land, to one Bessie L. Kinley by warranty deed, which deed recites that "this conveyance is made subject to all incumbrances of record affecting said property," but otherwise the deed makes no reference to said restrictive covenant contained in the Hall deed. This deed was also duly recorded on October 26, 1915.

At the time Walter M. Hall owned the entire property, that is, all of said lots 3 and 4, and before said property was conveyed to Myers and by Myers to Bessie L. Kinley, it was improved with a large frame house, which house faced or fronted east upon Brooklyn Avenue. After Bessie L. Kinley acquired title to the entire property, consisting of the whole of said two platted lots, she moved the frame house onto the west 42½ feet of said two lots, so that the house then faced or fronted south on Howard Avenue. Upon the east 99½ feet of said two lots, Bessie L. Kinley erected a three-story brick apartment building, containing twelve separate three-room apartments, three garages and a basement, fronting east on Brooklyn Avenue.

Thereafter, the deed of trust executed by Fay Myers on September 27, 1915, was foreclosed and the property conveyed thereby, viz., the east 94½ feet of said lots 3 and 4, was sold at a trustee's sale held on October 5, 1917, the purchaser at such foreclosure sale being the beneficiary named in said deed of trust, said National Association of Letter Carriers of United States of America, subject to the right of said Bessie L. Kinley to redeem said property within the one year period prescribed by statute. [R. S. 1919, sec. 2222.] Bessie L. Kinley never exercised her right of redemption within the statutory period aforesaid, and Joseph F. Keirnan, as trustee, on November 29, 1918, executed and delivered a trustee's deed to the said purchaser at the foreclosure sale, which trustee's deed was duly recorded on December 5, 1918. The trustee's deed makes no reference to the restrictive covenant contained in the deed from Hall and wife to Myers. Subsequently, in order to correct the description of the property intended to be conveyed by the said deed of trust and trustee's deed, Bessie L. Kinley and her husband, on September 20, 1920, executed and delivered a quit-claim deed to National Association of Letter Carriers of United States of America, the purchaser at the trustee's sale, conveying to said corporation all of the east 99½ feet of lots 3 and 4, block 2, in Dalcoulin Addition, except the east five feet of said lots in Brooklyn Avenue. The said quit-claim deed recites that it is made "to correct a misdescription in the amount of ground originally conveyed to the National Letter Carriers of the

United States of America, under a deed of trust by the grantors herein and later by a trustee's deed to the same property. It being the intention of the grantors herein to deed not only the land described in said deed of trust and trustee's deed, but an additional five feet of ground heretofore omitted from said instruments, making the land conveyed the east 99½ feet of lots 3 and 4, block.2, Dalcoulin, instead of the east 94½ feet, as described in instruments above referred to.'' The title to the east 99½ feet of said lots 3 and 4 subsequently passed by *mesne* conveyances to plaintiffs, who acquired title thereto on April 8, 1920. None of said *mesne* conveyances make reference to the restrictive covenant in the Hall deed.

On March 26, 1918, Bessie L. Kinley and husband conveyed the west 42½ feet of lots 3 and 4, block 2, in Dalcoulin Addition, to one James L. Donnell by warranty deed, which was duly recorded on April 1, 1918. Said deed contains the recital that ''this deed is made subject to all incumbrances of record affecting said above described real estate,'' but otherwise said deed makes no reference to the restrictive covenant contained in the Hall deed. The title to the west 42½ feet of said lots 3 and 4 subsequently passed by *mesne* conveyances to defendant, Jeffry Pleasant, who acquired title thereto on September 23, 1921. None of said *mesne* conveyances make reference to the restrictive covenant in the Hall deed.

The record before us is silent· as to whether Walter M. Hall, the original owner of the whole of said lots 3 and 4, and the grantor in the deed to Fay Myers containing the restrictive covenant, owned or was interested in any other property or tract of land in the city block in which said lots 3 and 4 were situate, or in the immediate vicinity of said lots, at the time he conveyed said lots to Fay Myers.

It was shown in evidence by defendant that, at the time of the institution of the instant suit and prior thereto, most, if not all, of the houses located within said city block, with the exception of those houses facing or fronting on Brooklyn Avenue, were owned and occupied by negroes. All of the houses fronting on Brooklyn Avenue were owned and occupied by white persons. In other words, it appears that approximately the west one-half of the city block in question was inhabited by negroes while approximately the east one-half of said city block, fronting on Brooklyn Avenue, was inhabited by white persons. It is also shown by the record that a large negro settlement extends several blocks north and south of Howard Avenue. and several blocks west of Brooklyn Avenue, and that the houses within said area are mostly occupied by negroes, except those houses fronting or facing east on Brooklyn Avenue, which houses are occupied by white persons. In other words, the record indicates beyond serious dispute that plaintiffs' property is almost immediately contiguous to a large negro settlement, the area of which extends over

several city blocks lying to the west, north and south of plaintiffs' property, but which negro settlement does not embrace the properties or lots immediately fronting and abutting on Brooklyn Avenue.

Plaintiffs' evidence tended to show that all of the twelve apartments in the apartment building located upon the east 99½ feet of said lots 3 and 4 were occupied by white tenants in September, 1921, when defendant acquired title to the west 42½ feet of said lots; that negroes (tenants of defendant negro owner) first occupied the frame house located on the west 42½ feet of said lots 3 and 4 in September, 1921, and that almost immediately after said negro occupancy commenced, seven out of twelve of plaintiffs' white tenants vacated, leaving seven apartments and three garages upon plaintiffs' premises vacant until January, 1923. Plaintiffs' evidence also tended to show that the space intervening between the rear of plaintiffs' apartment building and the frame house on defendant's property is approximately ten feet.

Defendant interposed a demurrer to the evidence at the close of the trial, which demurrer was overruled by the trial court, and exceptions were saved to the trial court's ruling thereon. Defendant assigns error in the refusal of her demurrer to the evidence and in the entering of a decree in favor of plaintiffs in accordance with the prayer of the petition.

I. At the outset it is appropriate for us to state our reasons for assuming jurisdiction of this appeal. Neither party to this action has questioned our jurisdiction or presented such question by their briefs, but the question of jurisdiction may always be raised *sua sponte* by this court, for no court should proceed to **Appellate Jurisdiction.** judgment in a case unless it has jurisdiction. [City of Tarkio v. Clark, 186 Mo. l. c. 294; Springfield Southwestern Ry. Co. v. Schweitzer, 246 Mo. l. c. 127, 128.] This court must guard its own jurisdiction and parties litigant cannot be permitted to confer jurisdiction merely by consent, stipulation or acquiescence. [Railway Company v. Schweitzer, supra; Vandeventer v. Bank, 232 Mo. l. c. 622.] It is clear from the record before us that we have no jurisdiction of this appeal under Section 12, Article 6, of our State Constitution, which prescribes or limits our appellate jurisdiction, unless this case is one "involving title to real estate." The case does not involve the construction of either the Federal or State Constitutions, nor does it affirmatively appear from the record that the amount in dispute, exclusive of costs, exceeds the sum of $7,500, so that we cannot assume jurisdiction upon either of those grounds. We must therefore determine whether jurisdiction is to be assumed and retained by this court upon the only other possible ground, namely, that the case involves title to real estate. In order

to determine that question, we must look to the pleadings for the issues raised and presented on the trial of the case, and decided by the learned chancellor below, and we must also look to the scope and effect of the decree or judgment from which the appeal is taken.

Inasmuch as exclusive appellate jurisdiction is conferred upon this court by our State Constitution "in cases involving title to real estate" (Constitution of 1875, art 6, sec. 12; Sec. 5, amendment of 1884 to Article 6 of the Constitution), this court often has been required to construe the clause, "in cases involving title to real estate," as used in the Constitution, in defining our exclusive appellate jurisdiction. Much has been written by this court, and by the several courts of appeals, upon that precise question. It would amount to supererogation for us to attempt to review herein the many cases bearing upon such question. Our ruling in each of such cases, however, has been bottomed upon the precise issues tried and determined in each case and the scope and effect to be given to the judgment rendered therein. It has been the uniform ruling of this court in such cases that, in order to give this court jurisdiction of an appealed case within the meaning of the aforesaid clause of the Constitution, it is not sufficient that title to real estate be collaterally or incidentally involved, or that the trial and appellate tribunals may be compelled to inquire into and consider the title in order to reach a decision of the questions or issues presented for judgment, but, in order to confer jurisdiction upon this court, it must appear that the judgment rendered, or to be rendered, in such case directly affects, or operates upon, the title to real estate. In Price v. Blankenship, 144 Mo. 1. c. 208, we said, in reviewing the prior decisions of this court: "It is now firmly settled that to give this court jurisdiction under Section 12 of Article 6 of the Constitution, because the title to real estate is involved, it must appear that the title to real estate will, in some way, be directly affected by the judgment to be rendered in the case. It is not sufficient that the question of title may be incidentally, collaterally or necessarily inquired into to settle the issues. The judgment to be rendered must directly affect the title itself to the real estate." Our ruling in Price v. Blankenship, supra, has been expressly approved and followed by this court in subsequent cases. [Schroer v. Brooks, 200 S. W. 1068; Handlan v. Stifel, 219 S. W. 616; Heath v. Beck, 225 S. W. 993; Mathews v. Hughes, 232 S. W. 99; Sikes v. Turner, 242 S. W. 940; Clinton County Trust Company v. Metzger, 266 S. W. 321.]

Is the instant case one "*involving* title to real estate" within the meaning and interpretation given to said clause of our Constitution by the prior decisions of this court? The word "involve" is defined in Webster's New International Dictionary as "to draw into an entanglement or complication; to complicate; to embarrass, as with

difficulties or perplexities; to implicate." Looking to the pleadings herein for the issue joined thereby and submitted to the trial chancellor, we find that plaintiffs' petition sets out *in haec verba* the restrictive covenant contained in the deed from Walter M. Hall and wife to Fay Myers, and avers that the said covenant "was intended to and did become a restriction running with the land and made for the benefit of the land itself." The answer of defendant specifically "denies that said provision became a restriction running with the land for the benefit of the land itself," and the answer furthermore avers that "defendant took title to the said west 42½ feet unburdened with any restrictions of any kind that the owners, or alleged owners (including the plaintiffs herein) of the east 99½ feet of said lots 3 and 4 might assert as against the ownership, occupancy or use of said west 42½ feet of lots 3 and 4, and these plaintiffs are not entitled to the relief prayed for in their second amended petition herein filed." The reply denies the averments of the answer. Thus, the issue whether defendant's title to the real estate in question is burdened with restrictions against negro ownership, use and occupancy of said real estate, is joined by the pleadings. The trial court necessarily was called upon to decide the issue thus joined by the pleadings; in other words, the court necessarily was called upon to make an adjudication concerning defendant's title to real estate. The decree entered herein sets out the trial court's finding upon the issue joined, which is "that the sale of said property to defendant, Jeffry Pleasant, and the occupancy thereof by her and her tenants was in violation of the restriction contained in the deed dated September 28, 1915, from Walter M. Hall and Annie C. Hall to Fay Myers." The court's finding upon the issue submitted is tantamount to a finding that the covenant contained in the Hall deed is a restriction running with the land in controversy, enforceable by plaintiffs, and hence that defendant's title to the real estate in controversy is burdened with said restrictive covenant for the benefit of plaintiffs' real estate. The decree permanently enjoins defendant "from selling, occupying, renting, leasing, or otherwise using or permitting the use of said west 42½ feet of lots 3 and 4, block 2, Dalcoulin . . . to or by negroes or persons of African descent for the period of time ending September 28, 1930."

If, as defendant avers in her answer, she took title to her said real estate "unburdened with any restrictions of any kind that plaintiffs might assert against her ownership, occupancy or use of said real estate," then she is entitled to the free and untrammelled right to alienate or convey said real estate to any person or persons whomsoever, regardless of race or color, and she also is entitled to the free and untrammelled right to occupy, use and enjoy said real estate without let or hindrance whatsoever. The decree entered herein restricts and

prohibits her free alienation of said real estate and her use and occupancy of the same. While the decree does not completely divest defendant of title, nevertheless it "complicates and entangles" her title and amounts, at least, to a partial divestiture of title. If the decree in this case be affirmed, defendant's title to real estate is certainly affected and at least partially destroyed. Such being the effect of the decree, it follows, we think, that the decree directly *"operates,"* that is to say, it "exerts power or influence, produces an effect" (Webster's Dict.), upon defendant's title. We are therefore constrained to hold that the instant case is one "involving title to real estate," and hence jurisdiction of this appeal must be assumed by this court. We have reached this conclusion because of the precise issue raised and presented by the pleadings herein, and because, in the determination of such issue, it seems apparent to us that the trial court was necessarily called upon to adjudicate the nature and extent of defendant's title to the real estate in question. This court, in reviewing the correctness of the trial court's finding and decree in the instant case, and in entering our own judgment disposing of the instant appeal, is likewise necessarily called upon to adjudicate and determine the nature and extent of defendant's title to real estate which she claims to own unburdened with restrictions affecting her rights of alienation, user and occupancy, at least so far as plaintiffs are concerned. Having settled the matter of our jurisdiction of the instant appeal, we proceed to the merits of the case.

II. The initial and primary inquiry in cases such as this, wherein a restrictive covenant is sought to be enforced in equity, is whether such restrictive covenant was imposed upon the land **For Benefit** owned by defendant for the benefit of the land owned **of Grantor.** by the plaintiffs, who are seeking to enforce the covenant. If such inquiry is answered in the affirmative, then equitable relief should be granted to the plaintiffs; if, on the other hand, such inquiry is answered in the negative, then plaintiffs must be denied the equitable relief prayed. [Coughlin v. Barker, 46 Mo. App. l. c. 63.] In answering this inquiry, the court must endeavor, if possible, to arrive at the intention of the parties to the original deed by which the restrictive covenant was created; and, as said in Kenwood Land Co. v. Hancock Investment Co., 169 Mo. App. l. c. 722, "the intention of the parties must be determined from the language of the covenant itself considered in connection with the surrounding circumstances at the time the covenant was made; or, as it is sometimes said, from the language of the covenant itself considered in the light of the entire context of the instrument containing it. [Kitchen v. Hawley, 150 Mo. App. 497.]" The authoritative judicial decisions furthermore announce the rule that the burden rests

upon the party plaintiff seeking to enforce the restrictive covenant to prove or establish that the covenant was imposed upon defendant's land for the benefit of the land owned by plaintiff.

Looking to the language of the covenant contained in the deed, dated September 28, 1915, from Walter M. Hall to Fay Myers, we find that it reads: "As a part of the consideration, the grantee for himself and his successors and assigns and grantees agree not to sell or assign or rent any of said property to a negro for a period at least of fifteen years from this date." The consideration for the deed is one moving from the grantee, Myers, to the grantor, Hall. Hence, the grantor, Hall, was the beneficiary of the consideration expressed in the deed, and, in the light of the language of the covenant itself, which recites that it was made by the grantee and covenantor, Myers, "as a part of the consideration" for the deed, the covenant would appear to have been made by the grantee, Myers, for the benefit of the grantor, Hall, in the absence of proof of a contrary intention of the parties to the deed.

The record before us is silent as to whether Walter M. Hall owned any other land in Dalcoulin Addition, or in the vicinity of the land in controversy, at the time he made the deed to Myers containing the restrictive covenant. So far as appears from the record, Hall may have owned and retained other land in the vicinity of the land in controversy and the restrictive covenant may have been intended for the benefit of such other land. In Sharp v. Ropes, 110 Mass. 381, one Heath, the owner of a large tract of land, laid out the same in lots. On two of said lots, the owner, Heath, erected a dwelling house, no part of which was within twenty feet of the street upon which it fronted. He thereafter conveyed parts of two other lots to plaintiff's grantor by deeds which contained a condition, or covenant, that for fifteen years no building should be placed on the granted premises within twenty feet of the street and no trade offensive to dwelling houses in the neighborhood should be carried on. Subsequently, he conveyed parts of two other lots to defendant by deeds containing the same restrictions. Defendant proceeded to erect a large building on his lots within four feet of the street and plaintiff sought to enjoin the erection of such building, claiming that she was entitled to the benefit of the restrictive covenant contained in the deed to defendant. It was held that plaintiff could not maintain her action for equitable relief. In ruling the matter, the court said: "But in the case at bar there is nothing from which the court can infer that the restriction contained in the deed from Heath to the defendant was intended for the benefit of the estate now owned by the plaintiff. No such purpose can be gathered from the plan, or from the situation of the property with reference to other land of the grantor. *It purports to be a condition imposed by the grantor,* and the deed points out the mode in

315 Mo.—79.

which he, his heirs or devisees may enforce it.   Neither of the deeds, under which these parties (plaintiff and defendant) respectively claim, purports to give to the grantee any such right against any other grantee.   For aught that appears, the condition may have been intended for the benefit of the grantor or his family, as long as they continued to own the dwelling house.   *The burden of proof is upon the plaintiff, if she insists upon giving to that condition any wider application,* and this burden we do not find that she has sustained.'' (Italics ours.)

In Doerr v. Cobbs, 146 Mo. App. 342, a common grantor of lots in a subdivision, conveyed, by separate deeds, different lots at different times to different grantees, all of such lots, however, being subject to certain restrictive covenants contained in the respective deeds. There was nothing to show that the common grantor did not own other lots in the subdivision at the times of such conveyances.   Defendant, a remote grantee of one of the lots, began an excavation on his lot for the purpose of erecting a building in violation of the restrictive covenants contained in the deed from the common grantor under which he claimed title.   Plaintiffs, remote grantees of another lot under *mesne* conveyances from the common grantor, sought to enjoin defendant from constructing on his lot a building in violation of the restrictive covenants contained in the deeds of the common grantor of plaintiffs and defendant.   In reversing a decree in favor of plaintiffs, the St. Louis Court of Appeals, speaking through GOODE, J., said: ''The infirmity in the case for plaintiffs is that there is nothing to connect them with the covenant in the deeds under which defendant claims title, so as to enable them to maintain this suit for the enforcement of the covenant.  .  .  .   The essential questions in cases like the present are whether the common grantor meant the restrictive covenant to inure only to his own benefit, or to the benefit of all persons to whom he had already conveyed or thereafter should convey property in the vicinity; and, if the latter was his purpose, whether it had been manifested in a way that purchasers would be treated as having bought with notice of it.   The primary inquiry is as to the intention of the common grantor in imposing the restriction; but, as suggested, supra, a bare intention to make the covenant inure to the benefit of all persons claiming under him by either prior or subsequent deeds, cherished, but not made known so as to affect purchasers with notice, would not impair the right of purchasers to hold their tracts exempt from the restriction.   [Coughlin v. Barker, 46 Mo. App. l. c. 63.]   Competent and sufficient proof must be furnished of the intention and that the defendant bought with actual or constructive notice of it.  .  .  .   For aught that appears, Flora Haydock (common grantor) may have owned other lots in Reber's subdivision when she conveyed to defendant, and therefore would have an interest of her

own in restricting the use of defendant's lots. . . . Therefore, we have nothing before us to prove the covenant in defendant's deed was meant for the benefit of plaintiffs. It is true, the same covenant was inserted in some deeds forming links in both plaintiffs' and defendant's chains of title; but the precedents hold this circumstance alone does not suffice to show the covenant was intended for the benefit of prior grantees and enable them to restrain its violation. [Coughlin v. Barker, 46 Mo. App. 54; Sharp v. Ropes, 110 Mass. 381; Mulligan v. Jordan, 50 N. J. Eq. 363; Summers v. Beeler, 90 Md. 474.]''

In 18 Corpus Juris, 396, it is said: ''Where restrictions imposed are not as a part of a general scheme of improvement, but are for the benefit of land retained by the grantor, the grantees, in case there are more than one, cannot enforce such restrictions against each other, unless there is a showing that the restrictions are intended for their benefit as well as that of the grantors.''

Mr. Devlin, in his recognized treatise on the Law of Real Property and Deeds (3 Ed.) volume 2, page 1858, says: ''In the absence of evidence that the restriction was imposed for the benefit of other land, it is construed as a personal covenant merely with the grantor.''

But whether the restrictive covenant in the instant case be construed as merely a personal covenant made with the grantor, Hall, as the covenantee, or whether the covenant be construed as having been made for the benefit of other land retained by the grantor, in neither of those events are plaintiffs in position to claim the enforcement of the covenant in equity or to recover damages for its violation in an action at law. While it may be that the grantor and covenantee, Walter M. Hall, or his devisees, heirs, or assigns, may maintain an action at law for breach of the covenant, or a subsequent grantee of other land retained by Walter M. Hall at the time the covenant was made, for the benefit of which land the covenant may have been made, may enforce the covenant in equity, nevertheless, it is clear to us that plaintiffs cannot avail themselves of such rights of action, for the obvious reason that there is no privity, either of contract or of estate, between plaintiffs and the covenantee, Walter M. Hall.

In 15 Corpus Juris, 1299, 1300, it is said: ''By the common-law rule, an action upon a covenant can be brought only by the covenantee, or by his personal representative when the covenant does not run with the land, or when it does so run, provided the breach occurs prior to his death, or by his heirs or devisees if the breach occurs after his death. . . . Choses in action are now generally assignable, and therefore an assignee of a covenant may sue thereon in his own name.''

Again, in 15 Corpus Juris, 1256, 1257, it is said: ''Where a covenant runs with the land, the owner of the land at the time of its breach, whether an immediate or remote grantee, may maintain an action for

its breach in his own name against the original or any subsequent grantor. . . . But a right to maintain an action for the breach of such covenants will not pass if the restrictions were purely for the benefit of the grantor, or where the covenants were not part of a general plan of improvement; or, it has been held, where they were not for the benefit of the land purchased by the assignee.''

Speaking of the right of a complainant to enforce the observance of a restrictive covenant in equity by writ of injunction, the text-writer says, in 22 Cyc. 863, 864: ''But although it is not necessary that the complainant should be a direct party to the covenant sought to be enforced, it is necessary that he should have bought with notice of and in reliance on it, *and that the covenant should have been entered into for the benefit of the land the complainant owns, and not merely for the personal advantage of the original covenantee.*''

Inasmuch as plaintiffs herein are not shown to be assigns of the original covenantee, Walter M. Hall, or grantees of any land retained by the covenantee, for the benefit of which land the covenant may have been made, it follows that there is no privity between plaintiffs and said covenantee, Hall, and hence plaintiffs cannot maintain this action as privies of Walter M. Hall, the original covenantee and grantor in the deed containing the restrictive covenant.

III.   Plaintiffs contend, however, that, inasmuch as there is no evidence in the record that the covenantee, Hall, retained any other land in the vicinity of the land he conveyed to Myers, the covenant must therefore be construed as not having been made for **For Benefit** the personal benefit of Hall, or of any land retained by **of Grantees.** him, but must be construed as having been made for the benefit of the land conveyed by Hall to Myers, and consequently as having been made for the benefit of Myers and his remote grantees, including the plaintiffs.   However, as we have said, the burden rested upon plaintiffs to show, either by the language of the covenant itself or from extraneous facts and circumstances, that the restrictive covenant contained in the deed from Hall to Myers was intended by the parties to that deed to be made for the benefit of the land conveyed and not for the personal benefit of Hall, or of any land retained by him at the time of such conveyance.   The language of the covenant itself, in the absence of proof of a contrary intention of the parties to the deed, would indicate that the covenant was entered into either for the personal benefit of the covenantee, Hall, or for the benefit of other land retained by him.   As said in Coughlin v. Barker, 46 Mo. App. l. c. 61: ''Such a restriction in the land conveyed is generally construed to have been intended by the parties to the deed for the benefit of the land retained by the grantor in the deed, since in most cases it could obviously have no other purpose.''   Plaintiffs offered

no proof that Hall did not retain other land in the vicinity of the land conveyed to Myers, nor did plaintiffs offer proof of extraneous facts or surrounding circumstances from which we may reasonably draw the inference and arrive at the conclusion that the restrictive covenant was intended by the parties to the deed to be made for the benefit of the land conveyed.

Defendant insists that, even though the land conveyed by Hall to Myers, and in turn conveyed by Myers to Bessie L. Kinley, may have been intended by the parties to the Hall deed to be burdened with the restrictive covenant, nevertheless Myers, and his grantee, Bessie L. Kinley, each in turn became the owner of the whole tract of land conveyed, and, as the owner of the whole tract, either Myers or his grantee, Kinley, was free to do with it as he or she pleased, except as against the original covenantee, Walter M. Hall, or his privies, and hence either Myers or Kinley was free to convey the whole, or any part, of said land free from restrictions as to its use, provided the original covenantee, Hall, or one in privity with him, did not insist upon the observance of the restrictive covenant. Therefore, defendant contends that plaintiffs, who are the remote grantees of a portion of the land burdened with the restrictive covenant, have no right to enforce the covenant against defendant, who is the remote grantee of another portion of the same land.

**Conveyance of Entire Tract: Restriction upon Grantee.**

The principle for which defendant contends is thus stated by 2 Tiffany on Real Property (2 Ed.) page 1446: "An agreement restricting the use of a particular tract of land is prima-facie not to be construed as intended to restrict the use of one part of the tract in favor of another part thereof. For instance, an agreement by the grantee of land with his grantor that he will not make a particular use of the land conveyed cannot ordinarily be asserted by a subsequent purchaser of a part of that land as against the owner of another part."

The aforesaid principle seems to be supported by the weight of respectable judicial opinion. In Korn v. Campbell, 192 N. Y. 490, one James Lenox conveyed to one Lalor a tract of land. The deed by which the conveyance was made contained a covenant which provided that the grantee, Lalor, "will use or suffer the said premises to be used for the erection of first-class private residences only." Lalor conveyed an undivided interest in the tract of land to one Coleman, and thereafter Lalor and Coleman conveyed the whole tract to one Coburn, "subject to the conditions, covenants and restrictions against nuisances and buildings contained in deed of James Lenox of the above-described premises." Coburn thereupon divided the whole tract into eleven lots, upon each of which lots he placed a separate mortgage, none of which mortgages contained any reference to the restrictive covenant in the deed from Lenox. Coburn erected private

dwelling houses upon the eleven lots, which were conveyed to various persons by deeds in which there was no mention of the covenant. The eleven mortgages were thereafter foreclosed, and the separate lots were conveyed to various and different purchasers at foreclosure sale by referee's deeds which contained no part of the restrictive covenant and made no reference thereto. One of the lots passed by *mesne* conveyances to plaintiff and the adjoining lot passed by *mesne* conveyances to defendant, who began to make alterations in the building upon his lot so as to render it suitable for business purposes. Plaintiff, predicating his right to equitable relief upon the restrictive covenant contained in the original deed from Lenox to Lalor, brought an action to restrain defendant from making the alterations to his building. In denying to plaintiff the equitable relief prayed, the New York Court of Appeals said: "Lenox conveyed the whole plot to Lalor. That conveyance, it is true, was made subject to the restrictive covenant, but there is no evidence that the land was to be divided, and Lalor was under no obligation to divide it. The covenant was purely for the benefit of Lenox, or his remaining lands, if he had any. In no aspect of the case could the covenant be said to have benefited any part of the land burdened by it. That land all belonged to Lalor. It was all in one piece, and it was all covered by the same restrictions. The same conditions prevailed when Lalor conveyed an undivided one-third interest in the land to Coleman. The latter took with notice of the covenant in the deed from Lenox to Lalor, and, assuming that it was not merely a dry personal covenant, Lenox could have enforced it against Coleman as well as against Lalor. When Lalor and Coleman conveyed to Coburn, subject to the covenant in the deed from Lenox to Lalor, the land was still in a single piece, and Coburn, the absolute owner of it, was free to do with it as he pleased except as against Lenox, the original covenantee, or those who stood in his shoes. At this juncture in the history of the title there was for the first time a division of the property. Eleven separate lots were mortgaged by Coburn to the insurance company, but none of the mortgages embodied any part of the restrictive covenant, or contained any reference thereto. When the separate lots were thereafter conveyed to different grantees there was no mention of the covenant, and when the mortgages were subsequently foreclosed, the referee's deeds were qualified by no restrictions. Upon these facts we cannot assent to the contention of the learned counsel for the plaintiff that Lenox was the common grantor of the parties to this action; that the covenant was exacted by Lenox because the property was to be divided into lots, and that it was taken not for his own benefit, but to protect those who might later become the separate owners of parts of the tract. By the inevitable logic of the transaction Coburn became the common grantor of the parties. Having the title

to the whole of the land, he had the right to do with it as he pleased, except as against Lenox and his assigns. Coburn decided to divide the property and to sell it without restrictions, and he carried his resolution into effect. Neither the plaintiff nor the defendant has any different title than that which they derived through the unrestricted deeds from Coburn. The original covenant, which may be good in favor of Lenox or his assigns as against any grantee of Coburn in this tract, is not enforceable as between such grantees."

In Jewell v. Lee, 14 Allen (Mass.) 145, the original owner of land lying on both sides of a street, conveyed the land lying on the south side, which bordered upon the ocean, subject to the condition or restriction that the same should only be used for bathing and boating from the beach, and that only low bathing-houses should be built thereon. Subsequently, plaintiff and defendant, respectively, acquired title by *mesne* conveyances to separate portions of the restricted land and also acquired title to separate portions of the land on the north side of the street, immediately opposite their respective tracts on the south side of the street. Defendant attempted to move a dwelling house, which was located upon his land on the north side of the street, onto the tract of land owned by him on the south side of the street, and plaintiff, the owner of the adjoining tract of land, sought to restrain defendant from moving the dwelling house, claiming that the purposed use of defendant's tract of land would amount to a violation of the restriction contained in the deed from their common grantor. In dismissing plaintiff's bill for equitable relief, the court said: "The main ground on which the plaintiff rests his claim to equitable relief is, that the condition annexed by the original owner and grantor to his grant of the entire tract of land, of which the plaintiff and defendant now by *mesne* conveyances severally hold distinct parcels, constitutes a perpetual restriction on the use of the part now owned by the defendant, in the nature of a servitude or easement, on the observance of which the plaintiff, as the owner of the other part of the original parcel, has a right to insist. It is doubtless true that such may be the effect of a condition in a class of cases where it is apparent that the condition was annexed to a grant for the purpose of improving or rendering more beneficial and advantageous the occupation of the estate granted, when it should become divided into separate parcels and be owned by different individuals, or when the manifest object of a restriction on the use of an estate was to benefit another tract adjoining to or in the vicinity of the land on which the restriction is imposed. But, in the absence of any fact or circumstance to show such purpose or object, a condition annexed to a grant can have no effect or operation, either at law or in equity, beyond that which attaches to it by the rules of the common law. The benefit of the condition would in such cases enure only

to the grantor and his heirs or devisees, and the burden of it would rest on the estate to which it was annexed, and on those who held it, or any part of it, subject to the condition. Indeed, no restriction on the use of land and no condition annexed to its possession and enjoyment can be for the benefit of the grantee or those holding his estate in the granted premises, unless it be as a consideration of some restriction on other land, which may operate as an advantage or convenience in the use and occupation of the granted premises. Inasmuch as a grantee can restrict the use of land of which he is the owner according to his own will and pleasure, it is clear that he can derive no benefit from a restriction or condition as such imposed on its use or enjoyment by any prior grantor. There is nothing in the case before us which in any degree tends to show that there was any intent on the part of the grantor and grantee in the original deed by which the condition was annexed to that grant of the land now owned by the parties to this suit, to give any other or different effect to the condition than that which would result from it at common law. It does not appear that the original grantor had in contemplation the division of the land into separate lots or parcels which would be held by different owners, or that the condition was inserted in the grant for the purpose of creating a restriction on the use of the land as between subsequent grantees of different lots or parcels thereof. . . . So far as we are able to see, there is nothing to indicate that the original grantor of the premises, in annexing the condition, had any intent to regulate or control the possession or enjoyment of the premises for the benefit of subsequent owners or grantees of the estate, or any part of it, but that it was imposed by him solely for his own private and personal benefit, as the owner of other lots in the vicinity, in which the present plaintiff has no interest whatever.''

In King v. Dickeson, 40 Ch. Div. (English Law Reports) 596, a number of platted lots were conveyed by a common grantor by deeds wherein the grantee of each lot entered into a covenant with the common grantor and with the purchasers of the other lots not to build upon his lot beyond a specified building line. Plaintiff King, who was the grantee and purchaser of one of the lots, being Lot 258, mortgaged part of said lot. The mortgagees had notice of the restrictive covenant, but the mortgage contained no stipulation limiting the use of the mortgaged portion of the lot. The mortgage was afterwards foreclosed and title to that part of Lot 258 covered by the mortgage subsequently vested in defendants, who purposed to build beyond the building line fixed by the restrictive covenant. It was held that plaintiff, the owner of part of said Lot 258, was not entitled to enforce the restrictive covenant against defendants, the owners of the remainder of said lot. Said NORTH, J., delivering the opinion of the court: ''I think the case is free from doubt. The defendants

have acquired part of Lot 258, subject to the original restrictive covenant. . . . The question for my decision is, whether the defendants, who are purchasers of part of Lot 258, upon which they are proposing to build beyond the building line, can be restrained from so doing—not by the purchaser of another lot—but by the owner of the remainder of the same Lot 258. There was no agreement entered into between the plaintiff and his mortgagees as to the user of the land comprised in the mortgage, and though, no doubt, the mortgagees took the land subject to the obligations then existing in respect of it, and, therefore, subject to the right of the owners of the other lots to compel the observance of the restrictive covenant, there was nothing to prevent the owner of Lot 258 from building upon it in any way he pleased, provided that none of the owners of the other lots objected to his doing so. It has been suggested that the owners of the other lots have in many cases lost, by reason of their conduct, the right which they originally had to object to a breach of the covenant by the owner of Lot 258. If they have all lost that right, the owner of that lot would be entitled to build upon it in any way he pleased. It is suggested that the mortgagee of a part of Lot 258 entered into some new obligation with his mortgagor, the owner of the other part, as to the user of the mortgaged part. For that suggestion I can see no colour whatever. In my opinion the owner of Lot 258 conveyed the part of it comprised in the mortgage to the mortgagee subject to all rights then existing in relation to it, but did not by implication create as against the mortgagee any new right or obligation in his own favour, and, not having created any such new right or obligation as against the mortgagee, he cannot now set it up as against a purchaser who derives title through the mortgagee. The action, therefore, fails, and must be dismissed.''

To like effect are Graham v. Hite, 93 Ky. 474; Dana v. Wentworth, 111 Mass. 291; Wright v. Pfrimmer, 99 Neb. 447; and Lewis v. Ely, 100 N. Y. App. Div. 252.

As we view the matter, in the light of the record before us, neither Fay Myers nor his immediate grantee, Bessie L. Kinley, can be said to have derived any benefit from the restrictive covenant contained in the deed from Walter M. Hall. Fay Myers and Bessie L. Kinley, each in turn, acquired title to the whole tract of land conveyed by the Hall deed. As the owner of the whole tract of land, each in turn had the right to place such restrictions upon the tract, or any part thereof, as he (or she) desired, and, on the other hand, each had the right to convey the whole tract, or any part thereof, free from any restrictions whatsoever, except as against the original covenantee, Walter M. Hall. or one standing in his stead and in privity with him.

But plaintiff's claim that Bessie L. Kinley, as the subsequent owner of the whole tract of land conveyed by the Hall deed, evidenced her

intention to restrict the west 42½ feet of the original tract of land, now owned by defendant, for the benefit of the east 99½ feet of the original tract, now owned by plaintiffs. This claim

**Continuation by Later Deed.**

is based upon the fact that Bessie L. Kinley inserted in the deed to James L. Donnell, defendant's predecessor in title, conveying the west 42½ feet of the original tract of land, the recital that "this deed is made subject to all incumbrances of record affecting said above described real estate." Plaintiffs assert that the restrictive covenant is an "incumbrance of record affecting" the west 42½ feet of the land in controversy, and that the conveyance of said land to Donnell "subject to all incumbrances of record affecting said real estate" evidences the intention of the grantor, Bessie L. Kinley, to continue the burden of the restrictive covenant upon the land conveyed to Donnell for the benefit of the remainder of the original tract of land. However, the record shows that Bessie L. Kinley retained no other portion of the original tract of land conveyed by the Hall deed at the time she conveyed the west 42½ feet thereof to Donnell. The date of the deed from Bessie L. Kinley to James L. Donnell, conveying the west 42½ feet of the original tract of land, is March 26, *1918*, and that deed was recorded on April 1, *1918*. The deed of trust from Fay Myers to Joseph F. Keirnan, trustee, conveying the east 99½ feet, the remainder of the original tract, is dated September 27, *1915*, and said deed of trust was foreclosed and the property thereby conveyed was sold by the trustee under the powers of the deed of trust on October 5, *1917*, prior to the conveyance of the west 42½ feet by Bessie L. Kinley to Donnell. Neither the deed of trust nor the trustee's deed, conveying the east 99½ feet of the original tract, made any reference to the restrictive covenant contained in the Hall deed. The effect of the foreclosure of the deed of trust was to pass the title of Bessie L. Kinley to the east 99½ feet of the original tract to the purchaser at the foreclosure sale, subject only to the right of Bessie L. Kinley to redeem said property within the statutory period of one year after the sale. Bessie L. Kinley never redeemed said property. It seems clear to us, therefore, that Bessie L. Kinley retained no other land in the original tract at the time she conveyed the west 42½ feet thereof to James L. Donnell, defendant's predecessor in title. If there had been any proof that Bessie L. Kinley had intended to exact, or continue, the restrictive covenant by her deed to Donnell so as to burden the west 42½ feet for the benefit of the east 99½ feet of the original tract— which there was not—then the plan failed, because she parted with her title to the east 99½ feet before she parted with her title to the west 42½ feet. The record herein shows that plaintiffs' title to the east 99½ feet is derived from an earlier deed than that under which defendant derived title to the west 42½ feet. The earlier deed under

which plaintiffs hold title made no reference to the restrictive covenant. In Doerr v. Cobbs, 146 Mo. App. l. c. 351, the rule is thus stated by Judge GOODE: ''That such a plaintiff cannot maintain a suit to restrain the violation of a covenant in a later deed conveying land in the vicinity of that first conveyed simply because there is a restrictive covenant in the later deed and its violation will affect the enjoyment of the plaintiff's property, has been declared in cases which are directly in point. [Mulligan v. Jordan, 50 N. J. Eq. 363; Roberts v. Scull, 58 N. J. Eq. 397; Leaver v. Gorman, 67 Atl. 111; Hyman v. Tash, 71 Atl. 472; Summers v. Beeler, 90 Me. 474; Sharp v. Ropes, 110 Mass. 381.]''

It is apparent that plaintiffs are not assigns of Walter M. Hall, the original covenantee of the restrictive covenant, nor do they hold title to any land retained by Walter M. Hall at the time the original covenant was made; hence, plaintiffs are not in privity with the covenantee and cannot maintain this action as privies of Walter M. Hall. Plaintiffs, on the other hand, have failed to sustain the burden of proving that the parties to the Hall deed, containing the restrictive covenant, intended the covenant to be for the benefit of the land conveyed by that deed. Therefore, we cannot say that the *benefit* of the restrictive covenant is one running with the plaintiffs' land. Plaintiffs have failed to show herein that they are entitled to the *benefit* of the restrictive covenant.

**Privies.**

It follows that plaintiffs (respondents here) are not entitled to the equitable relief prayed, and that the trial court erred in not sustaining defendant's demurrer to the evidence and in entering a decree in favor of plaintiffs. The judgment *nisi* is therefore reversed and the cause is remanded with directions to dissolve the injunction and to dismiss plaintiffs' petition. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur, except *Graves, J.,* absent.